**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**EMILY TEMAN**, on behalf of herself and all others similarly situated,

Plaintiff,

v.

**SELECT JUSTICE, LLC**,

Defendant.

No. 1:24-cv-12656-LTS

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION TO STAY DISCOVERY PENDING SUMMARY JUDGMENT AND SUPPLEMENTAL BRIEF & REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL**

**INTRODUCTION**

Select Justice says everything with certainty, at least until discovery proves it wrong. Then it develops new certainties. Select Justice said with certainty neither it nor its agents called Ms. Teman as alleged in her TCPA complaint. But its discovery documents proved that wrong, with its records establishing Select Justice called her six times, at minimum. As another certainty, Select Justice insisted Ms. Teman had consented to its calls through Facebook advertisements soliciting claims against the rideshare company Uber. But that certainty dissolved when Select Justice discovered Ms. Teman has not used a rideshare service and its supposed "consent" derived from an IP address that does not belong to her. Now Select Justice is certain Ms. Teman's *daughter* consented on Ms. Teman's behalf, even though no evidence establishes that "fact." Yet Select Justice keeps developing new certainties and uses "developments" as an excuse to disregard from this Court's directive to complete class discovery and move this case forward.

This discovery whack-a-mole has continued for months and distracted the parties from advancing any discovery related to the class. In fact, Select Justice will *not* produce class discovery, halting Ms. Teman's progress on her claims while Select Justice works on its next theory. This is a familiar tactic. Select Justice's counsel has tried it in other cases, including in this District before Judge Murphy. *See* Doc. 23 in *Simmons v. Author Reputation Press LLC*, 1:24-cv-12330**.** In *Simmons*, counsel withheld class discovery and resisted plaintiff's motion to compel with a motion to stay while claiming the case was ripe for summary judgment—without moving for summary judgment. *Id*. The Court did there what it should do here: denied the motion to stay, granted the motion to compel, and noted that if "Defendant believes that dispositive facts are not in dispute, it may move for summary judgment at any time." *Id*. It then allowed plaintiff to move for fees. *Id*.

As in *Simmons*, Select Justice wants discovery on its own terms. But worse, it will not even correct its discovery errors, refusing to supplement answers like those claiming Ms. Teman consented to its calls, even though it has abandoned that theory for another. Ms. Teman stresses Select Justice has not proven either its consent theory or its claim that it never called Ms. Teman, yet it has no issue representing these contentions as "facts."

Under the evidence presented, here are the facts: In October 2023, *someone allegedly* entered Ms. Teman's name and number when responding to a Facebook ad soliciting claimants for an Uber lawsuit. That someone was not Ms. Teman, and she denies knowing who did it. After receiving "consent," either Select Justice or an agent called Ms. Teman six times, at minimum, on its behalf, even though her number is listed on the National DNC list. Select Justice does not deny calling her because its records *show* it did. It only denies doing so from the four numbers identified in Ms. Teman's complaint. While Ms. Teman acknowledges three numbers in her complaint belong to another litigation telemarketer, she maintains one belongs to Select Justice. And even if Select Justice never called her from *that* number, it never denies calling her. Nor would it make any sense to—Select Justice is trying to prove Ms. Teman *consented* to be called before it called her. This explains why Select Justice walks a line between denying it called Ms. Teman from "numbers identified in the Complaint" while never outright denying it called her—another delay tactic.

As a result, Ms. Teman asks the Court to see through Select Justice's wordsmithing and bluster and deny its motion for two reasons. ***First***, Select Justice failed to "submit sufficient factual information for the Court to conclude" Select Justice's "assertion's are correct." In fact the evidence shows the opposite. And ***second***, because discovery should proceed, it should proceed on Ms. Teman's discovery, including discovery directed at class issues. Indeed, the Court need only look to *Simmons* to understand Select Justice's tactics and how to address them.

## BACKGROUND

Ms. Teman is a consumer with a consumer phone line, which is used for personal residential purposes only. Comp. ¶¶ 13-15; Teman Decl. ¶ 3. Ms. Teman and her husband both use and pay for the landline and it is located in their jointly-owned home. *Id*. ¶ 4. Over two decades ago, Ms. Teman personally registered that number on the National Do Not Call Registry, warning telemarketers like Select Justice not to call her. Comp. ¶¶ 14–16; *Id*. ¶ 5. But Select Justice does not recognize those protections, nor does it comply with the TCPA. Instead, it spammed her phone over several months in 2023. Comp. ¶¶ 17–19. In the voicemails, Select Justice urged Ms. Teman join a lawsuit against Uber and Lyft for "rideshare assault[.]" *Id*. ¶20. Yet Ms. Teman never contacted Select Justice about rideshare litigation, as she has never even used a rideshare service, much less been assaulted in one. Teman Decl. ¶ 6. Telemarketing misconduct like Select Justice's is intrusive, and Congress enacted the TCPA to protect against invasions of privacy that were harming people. Comp. ¶¶ 1-2. For that reason, on October 20, 2024, Ms. Teman sued Select Justice under the TCPA in a class action, targeting its *en masse* campaigns that call consumers on the Do-Not-Call Registry, without their consent. Doc. No. 1.

On December 6, 2024, the parties jointly submitted a proposed scheduling order, which the Court adopted on December 11, 2024. Doc. Nos. 14, 17-18. The parties agreed, and the Court ordered, that all discovery except for expert discovery must be completed by August 10, 2025. Doc. No. 18. The parties did not propose sequencing discovery into two or more stages, and accordingly the Scheduling Order does not mandate bifurcating discovery. *Id.* Additionally, the Scheduling Order does not include a deadline to file dispositive motions. *Id.*

Two fact issues impact the pending motions: whether Ms. Teman consented (she did not) and whether Select Justice called her (it did). First, the parties agree Ms. Teman never consented

to Select Justice's calls, though Select Justice now theorizes Ms. Teman's daughter may have. Def. Supp. Mot., p. 4. Even so, Select Justice has not supplemented its discovery responses to correct its claim that Ms. Teman consented personally. Ex. B, Def.'s Resp. to Pl.'s First Disc. Requests ¶ 6 ("Teman, provided consent to receive solicitation telephone calls on two occasions by completing an opt-in form hosted on Defendant's Rideshare assault landing page"). As to Ms. Teman's daughter, Ms. Teman denies her daughter did so at all, or on her behalf. Teman Decl. ¶¶ 6–9. Select Justice lacks any evidence to contradict Ms. Teman's statements.

And second, Select Justice's documents establish that it called her:

| | | | | |
|---|---|---|---|---|
| 282483 - Emily Teman | Maria Accorinti | Spoke with via phone | phone | Call placed and lasted for 1 minute. |
| 282483 - Emily Teman | Maria Accorinti | Spoke with via phone | phone | Call placed and lasted for 1 minute. |
| 282483 - Emily Teman | Maria Accorinti | Spoke with via phone | phone | Call placed and lasted for 1 minute. |
| 282483 - Emily Teman | Maria Accorinti | Spoke with via phone | phone | Call placed and lasted for 1 minute. |
| 282483 - Emily Teman | Maria Accorinti | Spoke with via phone | phone | Call placed and lasted for 14 seconds. |
| 282483 - Emily Teman | Maria Accorinti | Spoke with via phone | phone | Call placed and lasted for 1 minute. |

Ex. C, Def.'s Doc. Prod., SEL0001. Yet Select Justice has not identified the number that placed those calls in discovery, failing to supplement its responses to Ms. Teman's requests for that information.

**LEGAL STANDARD**

Fed. R. Civ. P. 26 affords district courts "broad discretion" in managing the timing and sequencing of discovery, *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998), and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion, *Pub. Citizen v. Liggett Grp., Inc.,* 858 F.2d 775, 789 (1st Cir. 1988). Notwithstanding

the Court's inherent power to stay proceedings, discovery "stays cannot be cavalierly dispensed: there must be good cause for their issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced." *Marquis v. FDIC,* 965 F.2d 1148, 1155 (1st Cir. 1992) (quoted and applied by *Dicenzo v. Massachusetts Dep't of Correction,* 2016 U.S. Dist. LEXIS 4166, *4 (D. Mass. Jan. 13, 2016) in context of discovery stay).

Additionally, "[b]ifurcation is ordinarily the exception and not the rule." *Simmons v. Author Reputation Press LLC,* 2025 U.S. Dist. LEXIS 50055, at *2 (D. Mass. March 18, 2025) (citing *Hewlett-Packard Co. v. Genrad, Inc.*, 882 F. Supp. 1141, 1158 (D. Mass. 1995). *See also Wilson v. Quest Diagnostics, Inc.*, 2019 U.S. Dist. LEXIS 224798, at *9-10 (D.N.J. Aug. 22, 2019) (highlighting (1) the unfairness of bifurcation, as "both sides have a right to discovery," and (2) the inefficiency of bifurcation, as it would lead to multiple rounds of summary judgment and unnecessary delay).

Faced with similar requests, "[c]ourts in this district have bifurcated individual merits and class discovery where doing so served the interests of justice given the allegations and circumstances of particular cases." *Katz v. Liberty Power Corp., LLC*, 2019 U.S. Dist. LEXIS 30901, at *4-5 (D. Mass. Feb. 27, 2019). Furthermore, to determine whether a stay is warrant, this Court should consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Fitzmorris v. Weaver*, 2024 U.S. Dist. LEXIS 10476, at *5 (D.N.H. Jan. 22, 2024) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)). Finally, the filing of a dispositive motion, or the intent to do so again, is insufficient to support a stay of discovery. *Baker v. Swift Pork Co*., 2015 U.S. Dist. LEXIS 152235, at *2 (W.D. Ky. 2015 Nov. 10,

2015) ("the mere filing of a dispositive motion, such a motion for judgment on the pleadings or motion to dismiss, is insufficient to support a stay of discovery.").

**ARGUMENT**

Select Justice has not supplied the evidence the Court ordered it to produce, and staying or bifurcating discovery under these circumstances would disserve the interests of justice. *Katz*, 2019 U.S. Dist. LEXIS 30901, at *4-5. Rather, if the Court grants Select Justice's request to stay discovery, it would cut off Ms. Teman's access to the discovery she needs to prove her case and oppose Select Justice's contemplated dispositive motion. For example, although Select Justice's document production proves it called Ms. Teman no less than six times, it has not provided the number(s) from which it called Ms. Teman.

The Court should not allow Select Justice to pick several defenses of its choosing and then withhold because it plans to file a dispositive motion at some unspecified time. Both sides have a right to discovery. Indeed, the Select Justice's request to limit discovery to its chose defense is "untenable and unfair." *Wilson v. Quest Diagnostics, Inc.*, 2019 U.S. Dist. LEXIS 224798, *9 (D. N.J. August 22, 2019) (denying similar request to bifurcate in a TCPA case). "The Court should not allow one side to pick one defense of its choosing, limit discovery to that issue, and then presumably try a summary judgment motion. Both sides have a right to discovery." *Id.* Nor will Select Justice be prejudiced if discovery proceeds, because it can still move for summary judgment and attack Ms. Teman's discovery request by means of specific objections, if appropriate. Instead, the proposed stay would prejudice Ms. Teman and the class members from obtaining their day in court. *See, e.g., In re Atl. Pipe Corp.,* 304 F.3d 135, 147 (1st Cir. 2002) ("[I]t is trite but often true that justice delayed is justice denied.").

Select Justice also cites the factors outlined in *Fitzmorris v. Weaver*, Def.'s Mot. p. 6, which the Court should consider in determining whether a stay is appropriate, but it does not even try to address the third and fourth *Fitzmorris* factors – that is, the injury that will result to Ms. Teman if a stay is granted, and where the public interest lies. *Fitzmorris,* 2024 U.S. Dist. LEXIS 10476, at *4-5. Instead, it simply ignores the prejudice that would result to Ms. Teman if discovery was stayed, as well as the public's interest in collectively holding Select Justice responsible for the widespread harm it has caused. As to the second *Fitzmorris* factor, irreparable injury absent a stay, Select Justice mischaracterizes the record when it exaggerates the burden of responding to Ms. Teman's Second Set of Discovery Requests. Def.'s Opp. p. 9.

And finally, regarding the first and "most critical" *Fitzmorris* factor,[1] the likelihood of success on the merits, Select Justice failed to submit sufficient factual evidence to support the claims it may raise in its summary judgment motion, despite getting a second bite at the apple. As shown below, Select Justice does not submit sufficient factual information for the Court to conclude: (A) Ms. Teman did not receive any telephone calls from Select Justice at the numbers identified in the Complaint; (B) someone from the address of Ms. Teman's daughter provided consent for Ms. Teman to receive calls from Select Justice; (C) Ms. Teman is not the owner/subscriber of the phone number; (D) the number at issue is a business number; and (E) Ms. Teman did not "personally" register the phone number on the national Do Not Call Registry. Select Justice has failed to meet its burden and is therefore not entitled to a stay of discovery.

**a. Select Justice admits it solicited Ms. Teman**

Select Justice never denies it—or an agent on its behalf—called Ms. Teman, it says only that it never called her from the "numbers identified in her complaint." Def.'s Supp. Mot., pp. 2–

[1] The first and second factors are both the "most critical." *Fitzmorris*, 2024 U.S. Dist. LEXIS 10476, at *5 (citing *Nken v. Holder,* 556 U.S. 418, 434 (2009).

3. This is a distinction without a difference. If Select Justice called her, then it called her, and it should identify the number if it is not identified in the complaint.

Ms. Teman alleges that she received more than a dozen calls from Select Justice over several months in 2023, and that some of the calls came from (413) 343-4738. Comp. ¶¶ 17-18. In the affidavit Select Justice attaches to its Supplemental Motion, Select Justice admits its "utilized" (413) 343-4738 for the purpose of establishing leads. Def.'s Supp. Mot., pp. 2-3 & Ex. A. Ms. Teman's affidavit confirms she received calls from (413) 343-4738. Teman Decl. ¶ 6. While Ms. Teman also alleged Select Justice called her from (281) 402-3278, (877)-324-2518, and (855) 216-5126 (Comp. ¶18), she learned in discovery that those numbers are associated with another entity, "Intake Desk." Therefore, she supplemented her discovery responses to confirm she received calls from Select Justice, without stating which number Select Justice called her from:

> Subject to and without waiving such objections, Ms. Teman received several calls from Defendant over several months in 2023. These calls were placed to phone number (508) 877-6625 and came from Defendant, as Defendant acknowledges in part in its production showing that it called her. Ms. Teman did not answer the calls. Discovery is ongoing, and Ms. Teman will supplement her response to this request after reviewing all documents produced in discovery.

Doc. 39-5 ¶ 18. Select Justice illogically claims that either Intake Desk or Select Justice made the calls, and "one must be liable for the calls to the exclusion of the other." Def.'s Opp. p. 3. Yet Intake Desk committed the *same* misconduct as Select Justice under the TCPA during the same period. The calls emanating from the Intake Desk numbers are not presently at issue, *id.,* but the calls Ms. Teman received from Select Justice are at issue here.

While Select Justice disputes which phone numbers it called Ms. Teman from (although it has this information and will not provide it), it cannot in good faith dispute that it made at least six calls to Ms. Teman. In its Opposition to Plaintiff's Motion to Compel and Supplemental Motion, Select Justice is careful not deny that Select Justice or Leadclient called Ms. Teman. In its

discovery responses, Select Justice admits that (1) its vendor "Leadclient made calls to the Ms. Teman," (2) "Leadclient manually places calls to individuals who, like Teman, are seeking this information and who have expressed their consent to receive calls regarding the same," and (3) multiple individuals "were involved in making outbound calls as part of the campaign that resulting in the alleged contact with the Ms. Teman." Ex. B, Def.'s Resp. to Pl.'s First Disc. Requests, Interrog. Resp. ¶¶ 2–3, 7. Plus, the documents Select Justice produce also confirm that it called her, as depicted in the screenshot above. Ex. C, Def.'s Doc. Prod., SEL0001. Thus, the evidence shows at minimum that Select Justice called Ms. Teman. The only dispute is whether the calls were unlawful.

Additionally, while Select Justice admits that the telephone number with the (413) exchange "belonged" to it and that it "is a number utilized by Defendant for the purposes of established leads," Def.'s Supp. Mot., pp. 2-3, Ex. A, ¶2, it first denied that "the telephone numbers referenced in the Complaint were used to call the Ms. Teman *insofar as the numbers do not belong to, and are not utilized by Defendant*." Ex. B, Def.'s Resp. to Pl.'s First Disc. Requests, Interrog. Resp. ¶ 2 (emphasis added). Select Justice's affidavit in support of its Supplemental Motion is signed by Dax Valdez, a self-identified employee of LeadClient. Def.'s Supp. Mot., Ex. A, ¶1. Mr. Valdez also signed Select Justice's discovery responses. Mr. Valdez therefore simultaneously claims that (413) 343-4738 does not belong to, and is not used, by Select Justice, and that (413) 343-4738 is used by Select Justice. *Cf.* Ex. B, Def.'s Resp. to Pl.'s First Disc. Requests, Interrog. Resp. ¶ 2 *with* Def.'s Supp. Mot., Ex. A, ¶ 2. Both representations cannot be true. These contradictions undermine the veracity of Select Justice's discovery responses and the affidavit attached to its Supplemental Motion, including Select Justices' unsupported allegation that it never made calls to Ms. Teman from (413) 343-4738.

Select Justice's discovery responses and document production also beg the question – from what number does Select Justice claim it, or Leadclient, called Ms. Teman, if not from (413) 343-4738? To address this question, and the contradictions in Select Justice's discovery responses and affidavit, Ms. Teman's counsel seeks to depose Mr. Valdez, but Select Justice refuses to produce him, baselessly claiming that Ms. Teman's counsel must depose a 30(b)(6) witness first instead. Select Justice also claims that "to the extent plaintiff argues that the planned 30(b)(l) deposition of Defendant is necessary to respond to any such motion, this is of no moment insofar as any such testimony would be provided in an individual capacity only and would not bind the Defendant." Def.'s Opp. p. 2. But Mr. Valdez is the signatory of both sets of Select Justice's discovery responses and amended responses, as well as the affidavit attached to its Supplemental Motion. So Select Justice has already used Mr. Valdez to "bind" Select Justice to its discovery responses and the contradictory representations it made in its affidavit. Select Justice cannot have it both ways – on the one hand, using Mr. Valdez's testimony only when it benefits Select Justice, and on the other hand, claiming his testimony would not be binding on Select Justice in circumstances where Select Justice cannot control the contents of testimony by means of written responses or affidavit. Mr. Valdez no doubt has crucial information regarding Select Justice's "utilization" of the number(s) it used to call Ms. Teman and the class. Therefore, at minimum, the deposition of Mr. Valdez is necessary to address the merits of the first argument Select Justice plans to raise in its summary judgment motion.

**b. Neither Ms. Teman nor her daughter consented to Select Justice's calls**

As an initial matter, Select Justice's second defense highlights the duplicity in Select Justice's position, as Select Justice denies calling Ms. Teman on the one hand, while claiming it had consent to call her on the other. Meanwhile, Select Justice refuses to provide any information

regarding the number(s) it called her from, or produce Mr. Valdez for deposition, instead seeking a stay due to is supposed forthcoming motion.

That aside, Select Justice mischaracterizes the evidence, stating that Ms. Teman's "daughter expressly provided consent to receive calls from the Defendant." Def. Mot. p. 3, fn. 3. But linking an IP address to Ms. Teman's daughter's address does not prove the "daughter expressly provided consent to receive calls from Defendant." Def.'s Mot. pp. 3, fn. 3, and 5. Those assertions are based on underlying assumptions that are not simply supported by the evidence the parties have received from unbiased third parties.

The "evidence" Select Justice relies on to link IP Address 100.0.90.24 to the consent it allegedly received, the "Rideshare Reports" which Select Justice attaches to its Supplemental Motion as Exhibit F, is internally-generated, unauthenticated, and lacking foundation. Exhibit F is also partially illegible (*see* Def. Supp. Mot., Ex. F, pp. 2-3 of 7), and does not appear to have been produced in a native file format. Put simply, Select Justice's Exhibit F does not establish Ms. Teman's daughter or anyone in Ms. Teman's daughter's household provided Ms. Teman's consent to receive calls from Select Justice.

By way of background, Select Justice's theory of consent hinges entirely on whether someone provided consent for Ms. Teman to receive solicitation calls from Select Justice "by completing opt-in forms hosted on Select Justice's Rideshare assault landing page" through Facebook advertisements. Ex. B, Def.'s Amend. Resp. to Pl.'s First Disc. Requests, Interrog. Resp. ¶ 6. According to Select Justice:

> The submissions were recorded by Facebook, a website whose reputation is beyond reproach, on which Defendant runs ad campaigns for its services to assist individuals in seeking recovery for injuries sustained in rideshare vehicles. Plaintiff's dual submissions generated two unique Facebook Click IDs… which passed directly into Defendant's system and reflects validation that Plaintiff responded directly to Defendant's Facebook

advertisements.

*Id.* Likewise, Select Justice's Exhibit F purports to show that someone using IP Address 100.0.90.24 provided Ms. Teman's information to Select Justice through "FacebookAds." Def. Supp. Mot., Ex. F, pp. 4-5 of 7. But both parties subpoenaed Facebook for information linking the IP address and consent submissions to any Facebook account, including Ms. Teman's, and Facebook lacked any information responding to the requests.[2]

Ms. Teman also spoke with her daughter, who expressly denies that she provided her mother's information to Select Justice through its Facebook advertisements or otherwise, and that if someone did in fact provide Ms. Teman's contact information to Select Justice, her daughter has no reason to know who did. Teman Decl. ¶ 8. And even if Select Justice proved that Ms. Teman's daughter or someone else provided consent for Ms. Teman to receive calls from Select Justice, this would not establish that Ms. Teman *herself* consented to the calls. In ruling on cross-motions for summary judgment on the issue of consent, where a defendant raised nearly identical arguments as Select Justice does here, this Court denied defendant's motion for summary judgment, and instead granted partial summary judgment for the plaintiff on the issue of consent. This Court reasoned:

> Even if the Court draws an adverse inference that Mantha did visit the Snappy Auto website, QuoteWizard still does not meet its burden of proving consent, even drawing all reasonable inferences in favor of it. All QuoteWizard contends is that "*someone, somewhere*, entered Mantha's actual personal information" on the website. Doc. No. 223 at 15 (emphasis in original). Such a statement falls short of meeting the burden to establish that Mantha himself consented.

*Mantha v. Quotewizard.com, LLC,* 2022 U.S. Dist. LEXIS 19502, at *26, fn. 24 (D. Mass. Feb. 3, 2022). *See also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) (summary

[2] Facebook responded informally through counsel, and counsel represents it lacked any responsive information.

judgment is improper where there is a genuine dispute of material fact as to whether the person who provided consent for plaintiff to receive calls from defendant acted as plaintiff's agent when providing the consent). Likewise here, at best, Select Justice can only claim that someone, somewhere, entered Ms. Teman's information on a Facebook page advertising Select Justice's services, based on its internally created Rideshare Reports. This "evidence" is therefore a far cry from establishing a strong likelihood of Select Justice's success on the merits.

**c. Ms. Teman is the subscriber of the phone number at issue**

Ms. Teman's telephone number is a residential telephone associated with her home address. Teman Decl. ¶ 3. In response to discovery, Ms. Teman disclosed that her husband, Glenn Teman, also uses the telephone number that Select Justice admits it made calls to, and appears on the bill, but denied that the telephone number "is owned and/or aid for by Glenn Teman or someone other than you personally." Doc. 39-4, Pl.'s Resp. to Def.'s First Interrogs. ¶ 16. While the bill is in Mr. Teman's name, Mr. and Ms. Teman are married, jointly pay the telephone bill, and jointly own the residence where their telephone is located. Teman Decl. ¶ 4. Select Justice cites no authority that a married couple who jointly pay bills, including the bill for the telephone which they both use at their jointly owned home, are not both "subscribers" to the telephone. And under basic legal principles, both spouses are responsible for debts incurred for the benefit of the marriage or the household, so even if Mr. Teman was the only one footing the bill (he is not), Ms. Teman is also legally responsible for the bill. *Id.* Therefore, Ms. Teman is in fact a subscriber to the telephone number to which Select Justice admits it made calls.

Select Justice cites a single case from the Seventh Circuit addressing the meaning of "called party" in 47 USCS 227(b)(1), the auto dialer section of the TCPA. *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 639, 640 (7th Cir. 2012). There, the Seventh Circuit found that "[f]or cell

service, the subscriber and the person who answers almost always are the same," *id.,* while recognizing an exception "in households where the cell subscriber puts the handset in a cradle that routes calls to other phones that family members or guests treat as if they were landline equipment." The Seventh Circuit did not address the definition of "subscriber" in Section 227(c), and "[q]uestions which merely lurk on the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster* v. *Fall,* 266 U.S. 507, 511 (1925).

And, at any rate, the Seventh Circuit's opinion suggests that the "called party" also means the user of the phone, which, under the facts here, would include Ms. Teman. Indeed, in reliance on the Seventh Circuit's "well-reasoned opinion" in *Soppet,* the Eleventh Circuit concluded that "'called party,' for purposes of § 227(b)(1)(A), means the subscriber ***or user*** of the cell phone." *Breslow v. Wells Fargo Bank, N.A.,* 2014 U.S. App. LEXIS 10457, *19 (11th Cir. June 5, 2014), vacated, op. withdrawn, sub. op., 755 F.3d 1265 (11th Cir. 2014) (emphasis added). Likewise, the Third Circuit has held, also for the purposes of Section 227(b), that although the plaintiff's roommate was the "subscriber" and intended recipient of the call, the fact that the plaintiff regularly used the phone and lived with roommate indicated he also had standing to bring a claim under the TCPA because he had privacy interest in avoiding the telemarketing calls the defendant made to their shared home. *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 327 (3d Cir. 2015). Select Justice has not established, and cannot establish, a strong likelihood of proving that Ms. Teman is not a subscriber to and user of her residential telephone. Its motion to stay must be denied.

**d. Ms. Teman's number is not a business number**

Select Justice has not presented clear evidence that Ms. Teman's phone is used only or mainly as a business line, such that no reasonable jury could conclude otherwise while resolving all genuine material factual disputes and drawing all reasonable inferences in Ms. Teman's favor. Based only on a screenshot of Ms. Teman's former LinkedIn account, Select Justice improperly "encourages the Court to find essentially that a phone number must fit into a binary of either a residential or business purpose," *Mantha, LLC,* 2022 U.S. Dist. LEXIS 19502, at *13. While Ms. Teman previously offered freelance editing on her LinkedIn page, and said "contact me at" the phone number at issue here, Ms. Teman has never even owned or operated a business, so it logically follows that Ms. Teman could never be considered a "business subscriber" under the statute. Teman Decl. ¶ 10. Moreover, Ms. Teman did not use her number for business purposes in the past, and does not use it for business purposes now. *Id*. Moreover, she has never received reimbursement from any business for the use of her number, nor taken any tax deductions for any business-related uses of her number. *Id.* Her telephone number has never been registered with a telephone company as a business line, and is not associated with any business or used for business purposes. *Id.*

The TCPA distinguishes between "business subscriber" and "residential subscriber" in 47 U.S.C. § 227(a)(2)(A). A residential subscriber is "a subscriber to telephone exchange service that is not a business subscriber." 47 C.F.R. § 64.2305. "According to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes…*i.e*., for personal activities associated with his or her private, domestic life.'" *Lirones v. Leaf Home Water Sols., LLC*, 2024 U.S. Dist. LEXIS 165900, at *17 (N.D. Ohio Sep. 16, 2024) (citing *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 206

(S.D.N.Y 2024). *See also Jackson v. Direct Bldg. Supplies LLC*, 2024 U.S. Dist. LEXIS 8811, at *13. (M.D. Pa. Jan. 17, 2024) ("Section 227(c)(1) describes a 'telephone subscriber' who has subscribed for 'residential,' *i.e.*, personal, purposes. 'Residential' is therefore used in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.")

Ms. Teman meets the definition of "residential subscriber" because she alleges her number is a non-commercial telephone number not associated with any business, and that she uses her number for personal residential purposes. Comp. ¶¶14-15. Indeed, the evidence above disproves any notion suggesting otherwise.

Even where a plaintiff admitted that the phone at issue was used for residential *and* business purposes in a TCPA case brought under Section 227(c), as here, this Court denied defendant's motion for summary judgment, holding:

> The text of the statute confirms this point. It does not limit the protection to a certain type of use, nor does it limit the protection to phones that are exclusively or only residential in character or to those phones whose use is predominately residential…Rather the inquiry to determine whether a phone number qualifies as a 'residential telephone subscriber' focuses on whether the subscriber has and uses the phone for residential purposes, regardless of if the subscriber also uses the phone for other purposes. Not only is this the necessary conclusion stemming from the ordinary meaning of 'residential telephone subscriber' in 1991, it is also the sensible approach in conformity with the language and purpose of the statute…That Mantha, undisputedly, also uses his cellular phone number to receive calls regarding his employment during the workday as well as outside of normal business hours does not eradicate the residential use and qualities of his cellular phone as QuoteWizard appears to contend.

*Mantha,* 2022 U.S. Dist. LEXIS 19502, at *13, 15-16. In *Mantha,* defendant cited an analysis of plaintiff's phone bill, reflecting that almost half of all calls to or from plaintiff's cellphone were to or from the telephone numbers connected to plaintiff's place of employment, or its employees. This still was not enough to transform plaintiff into a business subscriber. The Court held, "[t]hat

evidence, on QuoteWizard's motion, does not change the Court's conclusion that Mantha's phone number qualifies as a 'residential telephone subscriber' given that it has the attributes of one." *See also Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022) (holding mixed-use phones, or phones used for residential and business purposes, are not excluded from the DNC Registry and collecting cases).

As a result, the Court should decline to stay discovery on this ground.

**e. Ms. Teman "personally" registered the phone number on the national Do Not Call Registry**

In a cursory fashion, Select Justice claims that Ms. Teman has not established that she personally registered her number on the DNC Registry (Def.'s Oppo. p. 8), but Select Justice does not provide any additional factual information to the Court supporting this claim in its Supplemental Motion. Thus, Select Justice has failed to make a strong showing that it is likely to succeed on the merits. Moreover, Ms. Teman alleges her number has been listed on the DNC Registry since 2003. Comp. ¶16. This straightforward allegation can easily be confirmed by visiting https://www.donotcall.gov, clicking "verify your registration," and inputting Ms. Teman's phone number and email address. Select Justice asked Ms. Teman to admit she did not personally register the number at issue, and she denied the request, further stating that "[s]he personally listed her number on the Registry." Teman Decl. ¶ 5. And, at any rate, there is no requirement that an individual have personally registered the phone number. *Nichols v. eHealthInsurance Servs.,* 2025 U.S. Dist. LEXIS 37917, *5 (N.D. Cal. March 3, 2025) ("The Court holds that Matthews need not allege that he personally registered his number in the NDNC Registry."); *Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 U.S. Dist. LEXIS 220437, at *13 (N.D. Ill. Dec. 7, 2022) ("The focus is on whether the number was registered, not who did the registration. The regulation protects numbers, not particular people. That's why the Registry includes numbers, not names."); *Williams*

*v. PillPack LLC*, 2021 U.S. Dist. LEXIS 27496, *20 (W.D. Wash. Feb. 12, 2021) ("The Court does not read the TCPA regulations so narrowly as to require a called party to personally register his or her own number on the DNC Registry. As the regulations also clarify, 'do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the *consumer* or the telephone number is removed from the database administrator.' 47 C.F.R. § 64.1200(c)(2) (emphasis added).")

**f. The Court should grant Ms. Teman's motion to compel[3]**

Ms. Teman's motion to compel the telemarketing call data that is required to have this matter proceed to class certification and trial should also be granted. Indeed, *just this week* Judge Murphy granted an identical motion to compel seeking the same calling record documents in a TCPA case filed by Plaintiff's counsel. *See Simmons v. Author Reputation Press LLC*, Case No. 1:24-cv-12330, ECF No. 23 (June 18, 2025). In response to the motion to compel, the same counsel for the Select Justice filed the same type of response, asserting the records sought were overbroad, and that because they believe they may win the case on the merits, discovery should be stayed while they eventually move for summary judgment. This argument was forcefully rejected by Judge Murphy and ended with an invitation to file a motion for fees (even though plaintiff's counsel did not make such a request):

> The documents requested in RFP 16 are relevant to the assessment of damages and numerosity. Defendant objects that the request is facially overbroad, Dkt. [22] at 8-9, but that argument ignores Plaintiff's reasonable clarification, Dkt. [19] at 11-12. Accordingly, Defendant must produce documents sufficient to show the information identified in RFP 16, items (a)-(e), as well as well as other "data that is housed natively in the telemarketing call logs," Dkt. [19] at 11, consistent with RFP 16, item (f).

---

[3] Under Local Rule 7.1(b)(4), memoranda supporting or opposing allowance of motions shall not, without leave of court, exceed 20 pages, double spaced. Plaintiff's Opposition to Defendant's Cross-Motion to Stay Discovery Pending Summary Judgement and Supplemental Brief is almost 18 pages. Under Court order, Plaintiff may also file a reply brief, not to exceed five pages, in support of her Motion to Compel. Plaintiff's Reply in Support is 4.5 pages (pp. 19-23). For efficiency, Ms. Teman includes that reply here.

> The documents requested in RFP 17 are relevant to Defendant's consent defense. Defendant objects that RFP 17 would require it to hunt for "every single webpage on which putative class members referenced their telephone numbers," Dkt. [22] at 11, but the Court does not find this to be a reasonable reading of the Request. Defendant must produce documents on which it has relied, relies, or intends to rely in asserting a defense of consent…
>
> Pursuant to Fed. R. Civ. P. 37(a)(5)(A), Plaintiff may submit a motion for fees within 14 days.

This Court should hold the same. Select Justice's arguments are substantively similar to those rejected by Judge Murphy in *Simmons*. First, the requests are not overbroad because it is the Ms. Teman's expert who will take the telemarketing calls and limit them to numbers on the National Do Not Call Registry:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry ("NDNCR") and which calls were made using an automatic telephone dialing system ("ATDS"). The information is therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014).

Ms. Teman's expert witness, Aaron Woolfson, has provided a declaration making it clear that this information is required for him to complete his analysis:

> More specifically, I have been asked to opine whether there is a reliable method to identify which calls in call detail records ("CDRs") containing the calls made by or on behalf of Defendant to telephone numbers (a) that were called two (2) or more times in a twelve (12) month period by the Defendant, and (b) that were registered on the National Do Not Call Registry ("DNC") for more than thirty days (30) before the date of each of the calls.
>
> As described in this Declaration, it is my conclusion that there is a reliable method to identify which calls were made to telephone numbers (a) that were called two (2) or more times in a twelve (12) month period by the Defendant, and (b) that were

> registered on the DNC for more than (30) thirty days before the date of each of the calls using the call records that I understand will be produced in this matter.
>
> I will start by opening each of the files that contain call records data (collectively referred to as "Call Detail Records" or "CDRs"). I do this to (a) determine the format that the records are stored in, and then (b) to determine what pre-processing that I would need to conduct in order to achieve an import of the calls.
>
> I will then import the CDRs file into SQL database tables using Microsoft SQL™ Enterprise Manager. I will then place the totality of the calls into a database called *dbo.calls*, upon which I will run SQL statements.
>
> To identify calls made to numbers on the DNC, I will apply a set of filters to include only calls:
>
> > a. that were made either (a) to a number that contained precisely ten digits and started with a 2 through 9, or (b) to a number that contained precisely eleven digits and started with a 1 followed by a 2 through 9; and,
> > b. that were contained within structurable data; and,
> > c. that had an associated date; and,
> > d. that have a disposition or duration indicating the conveyance of call.
>
> I will then tag each of the calls within the database that I constructed with information from the Federal DNC Database.
>
> I will then exclude from the database any calls to telephone numbers that (a) that were not called two (2) or more times in a twelve (12) month period by the Defendant, and/or (b) that were not registered on the DNC for thirty days before the date of each of the calls.
>
> By doing so, I will be able to identify any calls that were made to telephone numbers (a) that were called two (2) or more times in a twelve (12) month period by the Defendant, and (b) that were registered on the DNC for more than thirty (30) days before the date of each of the calls.

*See* Exhibit D at ¶¶ 2-3, 28-33. Of course, Mr. Woolfson cannot perform a National Do Not Call Registry analysis for telemarketing calls without the records of the telemarketing calls Select Justice made.

Select Justice does not provide an expert declaration (or any declaration whatsoever) that these materials are not needed. While Ms. Teman has no objection to Select Justice limiting its production to numbers that were called on the National Do Not Call Registry at the time of the

call, the fact that Ms. Teman has requested the information needed for her expert to perform that analysis does not make it overbroad. Select Justice also lodges a curious objection to vendor related data, but then espouses that no such data is at issue in the litigation. Ms. Teman agrees that if no third-party calling data exists then none needs to be produced, but that does not make the request overbroad.

As Judge Murphy also held, simply because a defendant asserts that it may have an affirmative defense of consent for some of the calls does not mean that those telemarketing calls are not discoverable. Rather, it means the opposite: "Defendant must produce documents on which it has relied, relies, or intends to rely in asserting a defense of consent." *See Simmons* at *1. So too should Select Justice be ordered to provide that information

A telemarketer who claims it had consent to contact a particular consumer bears the burden of proof and must maintain records that prove such a claim. The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added). The FCC has also noted: "In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given. We strongly suggest that senders take steps to promptly document that they received such permission." *Id.* at ¶46. The case law has made this clear, including by the First Circuit Court of Appeals. *See Rosales v. Heath,* No. 8:17CV87, 2019 U.S. Dist. LEXIS 225294, at *9 (D. Neb. June 27, 2019) ("The FCC ruled that 'if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the *caller* to prove that it obtained the necessary prior express consent." Consistent

with that burden, all circuit courts deciding the question of whether consent is part of a prima-facia TCPA case or an affirmative defense have concluded that consent is an affirmative defense. *See Breda v. Cellco P'ship*, 934 F.3d 1, 4 (1st Cir. 2019) ("we understand consent to be an affirmative defense, which the caller has the burden to prove; lack of consent is not an element of the called party's claim."); *Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2nd Cir. 2018); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *Blow v. Bijora*, 855 F.3d 793, 803 (7th Cir. 2017); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1115 (11th Cir. 2014).").

Indeed, such requests have previously been compelled. *See e.g. O'Shea v. Am. Solar Solution, Inc.,* 2016 U.S. Dist. LEXIS 23420, *10 (S.D. Cal. Feb. 18, 2016) ("These requests ask for documents concerning prior express consent, Defendant's methods for obtaining phone numbers, and removal requests by call recipients. (Id. Attach. #4 Ex. 1, at 15-19.) The items sought relate to American Solar's affirmative defenses and are discoverable. See Fed. R. Civ. P. 26(b)(1)"); *Stemple v. QC Holdings, Inc*., 2013 U.S. Dist. LEXIS 99582, *19-22 (S.D. Cal. June 17, 2013) (compelling Defendant to provide proof of express consent and finding the RFP necessary, proper in pre-class certification discovery, and not unduly burdensome). As another court has held in a TCPA case when compelling similar information:

> If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.

*Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011). Select Justice's assertion that they acquired consent for some of their telemarketing calls does not make the request overbroad or irrelevant, it simply means Select Justice needs to produce documents supporting its affirmative defense.

**CONCLUSION**

For the reasons above, the Court should deny Select Justice's motion to stay and grant Ms. Teman's motion to compel.

Dated: June 19, 2025

By: */s/ Anthony I. Paronich*

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
508-221-1510
anthony@paronichlaw.com

Alex Phillips (*pro hac vice*)
Samuel J. Strauss (*pro hac vice*)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
aphillips@straussborrelli.com
sam@straussborrelli.com

*Attorneys for Plaintiff and the Settlement Class*

**CERTIFICATE OF SERVICE**

I, Anthony Paronich, hereby certify that on June 19, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 19th day of June, 2025.

By: */s/ Anthony I. Paronich*

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
508-221-1510
anthony@paronichlaw.com