IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMILY TEMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SELECT JUSTICE, LLC,<br><br>Defendant. | Civ. No. 1:24-cv-12656-LTS |

**DEFENDANT SELECT JUSTICE, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO QUASH OR MODIFY SUBPOENAS AND FOR A PROTECTIVE ORDER**

**I.      INTRODUCTION**

In this putative nationwide class action brought under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA"), Plaintiff Emily Teman ("Plaintiff") seeks to prevent Defendant Select Justice, LLC ("Select Justice") from discovering relevant information from her relatives despite indisputable evidence suggesting that one of them may have provided Plaintiff's phone number to Select Justice and consented to calls being placed to Plaintiff at that number. Plaintiff's Motion to Quash or Modify Subpoenas and for a Protective Order (the "Motion") must be denied in its entirety for multiple reasons.[1]

First, Plaintiff lacks standing to challenge the Subpoenas served on her relatives because she has not demonstrated they implicate her personal rights or any privilege. Plaintiff's relatives, meanwhile, did <u>not</u> sign the Motion, which was signed only on behalf of Plaintiff, and are thus not entitled to relief. The Motion should be denied on these bases alone.

---

[1] As a result of the parties' meet and confer discussions, Select Justice agreed to withdraw <u>without</u> prejudice the deposition notices served on Kerry and Terence Tamm, and therefore that portion of the Motion is moot. However, Select Justice's request for the Tamms' documents remains at issue.

Second, the discovery sought by Select Justice is highly relevant and falls squarely within the scope of Rule 26.  Compelling digital evidence from multiple sources suggests that Plaintiff's relatives may possess particularly relevant information bearing directly on the unique consent defense that Plaintiff faces and her adequacy as class representative.  Notably, Select Justice received *two* online consent forms requesting that it call Plaintiff, and both forms originated from the IP address of Plaintiff's daughter and son-in-law.  None of Plaintiff's relatives have submitted sworn declarations with the Motion denying that they submitted the forms.  The discovery from Plaintiff's family members is necessary to uncover facts surrounding the submission of those consent forms.  Not only does this evidence go towards Select Justice's defenses, but Select Justice also anticipates it may establish a direct conflict between the interests of Plaintiff and those of the putative class, given the potential liability she and/or her family face for possibly manufacturing a TCPA claim.

Third, Plaintiff's self-serving assertion (made through her counsel) that the discovery is "irrelevant" because it would not show that "[she] herself authorized the calls" is not a proper basis for quashing the Subpoenas.  Select Justice is entitled to explore whether Plaintiff provided the required consent *through her relatives*, and is entitled to do so through the narrowly tailored document requests and brief depositions.  Declarations from the relatives, which will no doubt be crafted with input from Plaintiff's counsel, and copies of the relatives' Facebook activity reports (which can be toggled on and off at any time) are not adequate substitutes for the narrowly tailored discovery sought by Select Justice.

Fourth, there has also been no *evidence* offered suggesting that the depositions of Plaintiff's relatives would impose an "undue burden."  That the relatives would need to take a few hours off from work or other obligations, or that the process would be "stressful," is not a

proper basis to avoid their depositions. Indeed, if the relatives truly do not possess any relevant information, then their depositions will be brief and uneventful.

Finally, the Court should deny Plaintiff's alternative requests to strike Document Requests 10 and 11 which seek her relatives' online browsing histories around the time of the consent form submissions, as this evidence is crucial to establishing whether the relatives are involved with submission of the consent forms on Plaintiff's behalf. Select Justice has now significantly narrowed the scope of those requests to cover a twenty (20)-day period encompassing the dates of the two opt-in submissions. The relatives browsing information may reveal critical evidence about their connection to the case and is necessary to corroborate their testimony.[2] Any sensitive, *irrelevant* information can be redacted from the production (and Select Justice has already proposed the parties enter into a protective order), but Plaintiff (or her relatives) cannot prevent disclosure of *relevant* information by objecting to the requests wholesale. Likewise, Plaintiff's other requests for relief are unreasonable and should be denied as discussed further below.

The stakes are high. If class certification is granted, according to Plaintiff, there could be "hundreds" of class members seeking statutory damages of up to $1,500 per alleged violation.[3] *See* Dkt. 1, ¶¶ 31, 41-42. Given this, the minor inconvenience to Plaintiff's relatives involved with producing a discrete set of documents and sitting for short depositions does not constitute an undue burden. The Court should reject Plaintiff's and/or her relatives' efforts to block Select

---

[2] For instance, and by way of example only, in the days leading up to the opt-in submissions for Select Justice's Rideshare Assault Campaign, the relatives may have searched terms such as "uber", "lyft", "assault", or "lawyer". Searches with terms such as "TCPA" or "claims against marketing and advertising companies" conducted before the opt-in submissions or any calls were made would also be relevant.

[3] Select Justice denies that any damages should be award.

3

Justice from developing the record it needs to establish that Plaintiff consented to receive calls from Select Justice and that she is not an adequate class representative.

II.     **RELEVANT FACTUAL BACKGROUND**

      A.     **Select Justice Only Contacts Individuals Who Consent To Be Contacted**

Select Justice offers an online platform that assists individuals who have suffered injury or harm by helping connect them, at no cost to the individual, with third party legal representation or other legal services based on their needs.[4]  Declaration of Dax Valdez ISO Select Justice's Opposition to Motion to Quash ("Valdez Decl."), ¶ 2.  Select Justice advertises its various campaigns online and through social media to reach individuals who may need legal services.  *Id*.

Users can "opt-in" to be contacted by Select Justice by submitting their names, contact information (including phone number), and other information to Select Justice through its webpage.  *Id*., ¶¶ 8-10.  The webpage clearly informs users that by submitting their information, they are consenting to be contacted by Select Justice at the phone number provided.  *Id*., ¶¶ 8, 13.  Select Justice only contacts persons who have consented to receive calls.  *Id*., ¶ 10.  It does not purchase leads from third parties.[5]  *Id*., ¶ 22.

---

[4] Select Justice is the public-facing entity and brand of LeadClient, Inc.  Plaintiff speculates that Select Justice may have obtained leads from LeadClient, and subpoenaed LeadClient for this reason.  However, LeadClient does not sell leads to Select Justice, and does not possess any documents relating to this litigation beyond documents possessed by Select Justice.  Valdez Decl. ¶ 23.

[5] Plaintiff accuses Select Justice of "purchas[ing]" leads "from an undisclosed seller."  Dkt. 64, at 4, 6.  This is wrong and appears based on an inaccurate interpretation of a document that relates to the cost of advertising campaigns on Facebook, - a document that has nothing to do with purchasing leads.  Valdez Decl., ¶ 22.  Select Justice does not purchase leads.  *Id*.

### B. Someone Provided Select Justice Consent To Contact Plaintiff From The Residence of Plaintiff's Daughter And Son-In-Law.

On October 20, 2023, someone clicked on a Facebook advertisement for Select Justice's "Rideshare Assault Campaign"[6] and was automatically redirected to Select Justice's webpage for that campaign. *Id*., ¶¶ 8, 11. The person filled out the online form, identified themselves as "Emily Teman," and provided Plaintiff's correct phone number, email address, and zip code.[7] *Id*., ¶ 11. Records obtained from third-party Verizon revealed that the IP address[8] associated with this submission was associated with Stacey Sibulesky, Plaintiff's daughter. *Id*., ¶ 20.

On October 28, 2023, someone using the <u>same</u> IP address (the one associated with Stacey Sibulesky) submitted a second consent form in connection with the Rideshare Assault Campaign. *Id*., ¶ 12. The person again identified themselves as "Emily Teman," and provided the same phone number and zip code. *Id*.

The consent forms contained the following disclosure language:

> By submitting this form, you confirm that you have read and agreed to Select Justice, LLC or LeadClient, Inc. or a law firm may contact you about their services at your above phone number even if it is on a National or State Do Not Call List. Calls / texts may employ automated dialing technology and prerecorded / artificial

---

[6] The Rideshare Assault Campaign focuses on individuals who may have been sexually assaulted, or who know someone who may have been sexually assaulted, while using a rideshare service such as Uber or Lyft. *Id*., ¶ 5.

[7] The email address provided with the October 20, 2023 lead submission matched the email address Plaintiff herself provided in subsequent correspondence to Select Justice. Plaintiff's claim that the consent forms contained a "false email address" likely pertains to a typographical error in the email address provided with the second lead submission (*i.e.*, "@rxn.com" as opposed to "@rcn.com") ("x" and "c" being adjacent to each other on keyboards).

[8] "An Internet Protocol address (IP address) is a numerical label such as ▮.0.2.1 that is assigned to a device connected to a computer network that uses the Internet Protocol for communication. IP addresses serve two main functions: network interface identification, and location addressing. https://en.wikipedia.org/wiki/IP_address (last visited Nov. 30, 2025)."

5

>voice messages and email. I understand my consent is not a condition of any purchase. *Id*., ¶ 13.

By submitting Plaintiff's information to Select Justice on October 20 and 28, 2023, the user(s) provided Select Justice consent to contact Plaintiff at the phone number provided regarding the Rideshare Assault Campaign.

On October 31, 2023, a different company, non-party Intake Desk, LLC ("Intake Desk"),[9] received a similar consent form submitted on behalf of "Emily Teman" in connection with its Talcum Powder Settlement campaign. *Id*., ¶¶ 16-18. This third submission provided the same contact information for Plaintiff and also originated from Plaintiff's daughter's (Stacey Sibulesky) IP address. *Id*., ¶¶ 18-19. Notably, the user who submitted the lead on the Talcum Powder Settlement page first typed the name "Sibulesky" into the box for "last name" before replacing it with name "Teman."[10] *Id*., ¶ 21.

Having received two consent forms requesting that it contact Plaintiff, Select Justice called Plaintiff several times at the phone number provided, to provide her with information about rideshare assault claims. *Id*., ¶ 14. On December 1, 2023, Plaintiff and her husband Glenn Teman sent Select Justice a letter requesting that it stop calling. *Id*., ¶ 15. Select Justice made no further calls beyond that date.[11] *Id*.

---

[9] Intake Desk competes with Select Justice and offers similar services. *See* https://www.intakedesk.com/about/. The two companies are not affiliated with each other.

[10] Plaintiff filed a near-identical class action lawsuit against Intake Desk in the case captioned *Teman v. Intake Desk LLC*, United States District Court for the District of Massachusetts, Case No. 1:25-cv-10647. That case has settled.

[11] Plaintiff argues that discovery about the consent forms is irrelevant because she asked Select Justice to stop calling her. However, there is no evidence that Select Justice continued to call her after she asked for the calls to stop.

### C. Plaintiff Seeks To Block Select Justice From Discovering Relevant Information Regarding The Consent Forms

On October 1, 2025, Select Justice served Subpoenas on Glenn Teman (Plaintiff's husband), Stacey Sibulesky (Plaintiff's daughter), Daniel Sibulesky (Stacey Sibulesky's husband who resides with her), Kerry Tamm (Plaintiff's daughter), and Terence Tamm (Kerry Tamm's husband). The Subpoenas seek their depositions and request narrowly-tailored documents that may shed light on who provided Select Justice consent to contact Plaintiff.

On October 27, 2025, Select Justice received written responses to the Subpoenas signed by Anthony Paronich as counsel for "Plaintiff and the Settlement Class."[12] *See* Dkt. 65-5. None of Plaintiff's relatives signed those responses. *Id*.

In meet and confer discussions, Plaintiff's counsel agreed to Plaintiff and Glenn Teman's in-person depositions, but refused to have them appear at Select Justice's counsel's Boston office even though Plaintiff and her husband reside less than 22 miles from that office.[13] Dkt. 65-6 at 2. Plaintiff also objected to the depositions of her other relatives, and in lieu of those depositions, offered to provide their declarations and "Facebook Activity Reports"[14] for two of her relatives (i.e., only for Stacey and Daniel Sibulesky). *Id*. at 3. Select Justice explained that

---

[12] It is unclear whether those responses were served on behalf of Plaintiff or her relatives. Although the body of the responses suggests the objections are made on behalf of the relatives, the documents are titled "**PLAINTIFF'S** RESPONSE TO AMENDED NOTICE OF TAKING OF DEPOSITION OF [GLENN TEMAN]." *See* Dkt. 65-5 (emphasis added).

[13] Select Justice's counsel informed Plaintiff's counsel that they were unable to find a suitable location for the deposition in Framingham, but offered to schedule them in Boston to avoid any rush hour commute, and offered to schedule them to occur simultaneously, consecutively, or on different days to accommodate Plaintiff and her husband's other obligations. *See* Dkt. 65-6 at 4.

[14] Plaintiff claims—without evidence—that a "Facebook Activity Report" provides a "history of every advertisement the Facebook user has ever clicked on Facebook, and every business the user has ever interacted with through Facebook." *See* Dkt. 65 at 8-9. Plaintiff is wrong. Facebook's ability to track user activity (including ad clicks) depends on a particular user's privacy settings and users may even delete their browsing histories. *See* III.B.3, *infra*.

these were not adequate substitutes for depositions (*see* III.B.1, *infra*), and the parties ultimately reached an impasse. *See* Dkt. 65-7. Plaintiff's Motion followed.

After considering this Court's comments during the November 17th status conference, Select Justice proposed to significantly narrow the timeframe and scope of Document Requests 10 and 11 relating to browsing history. Declaration of Michael Lane ("Lane Decl."), Ex. 1; *see also* III.D, *infra*. Glenn Teman and Stacey and Dan Sibulesky have agreed to submit their devices for inspection subject to an agreement on a search and collection protocol to be performed by a third-party expert, as well as the entry of a protective order that adequately addresses both the privacy concerns of Plaintiff and her relatives. Plaintiff, however, continues to challenge the document requests as to the Tamms.

### III.    ARGUMENT

#### A.    Plaintiff Lacks Standing To Challenge The Subpoenas

First, Plaintiff does not have standing to challenge Subpoenas that were served on her relatives, and thus her Motion should be denied for this reason alone. "The general rule is that a party has no standing to quash a subpoena served upon a third party" unless "the subpoena implicates a personal right or privilege of the party." *See Katz v. Liberty Power Corp., LLC*, 2020 U.S. Dist. LEXIS 112969, at **26-27 (D. Mass. June 26, 2020). This rule "applies with essentially the same force to a motion for a protective order." *Accusoft Corp. v. Quest Diagnostics, Inc.*, 2012 U.S. Dist. LEXIS 54216, at *32 (D. Mass. Apr. 18, 2012).

Plaintiff has identified no personal right or privilege with respect to the information sought by the Subpoenas directed at her relatives. Instead, she argues that the Subpoenas seek "irrelevant" and "intrusive" material and would impose "undue burden" on her relatives. *See* Dkt. 65 at 18. Again, she does not have standing to raise any of these objections. *See, e.g., Cabi*

*v. Boston Children's Hosp. Corp.*, 2017 U.S. Dist. LEXIS 230174, at \*\*7-8 (D. Mass. June 21, 2017) ("[A] party cannot confer standing upon itself simply by alleging that the information sought from the non-party is irrelevant to the underlying action"); *Katz*, 2020 U.S. Dist. LEXIS 112969, at \*28 ("Defendants lack standing to assert that privacy interest on [non-party's] behalf"); *Dmitriev v. Mann*, 2022 U.S. Dist. LEXIS 251977, at \*9 (D. Mass. Nov. 29, 2022) ("[T]he issue of burden is not really Mann's to raise, as he is not the one responding to these subpoenas"). Regardless, Plaintiff can object during the depositions or seek a protective order in the event she believes a particular line of questioning might implicate her privilege.

Second, there is no basis to grant relief to Plaintiff's relatives who did not themselves move to quash the Subpoenas. To be clear, the Motion and its supporting memorandum of law were not signed by or on behalf of the relatives. Instead, they were signed by Plaintiff's counsel only on behalf of Plaintiff,[15] *see* Dkt. 64 (Notice of Motion signed only by Alex Phillips as "*Attorneys for Plaintiff*"), and any attempt by Plaintiff now to reframe her Motion as being made on her relatives' behalf should be rejected. *See Boaz v. FE Express, LLC*, 2016 U.S. Dist. LEXIS 62211, at \*\*4-5 (E.D. Mo. May 11, 2016) ("If [defendant] intended to file motions to quash on behalf of third party Sinanovic, it needed to add Sinanovic to the docket sheet as a party movant, have counsel enter an appearance on Sinanovic's behalf, and then file the motions for movant Sinanovic. Contrary to [defendant's] assertion, this is not a 'hyper technical' matter, but rather is fundamental to bringing the motions on Sinanovic's behalf.").

---

[15] Similarly, the October 27th responses to the Subpoenas were signed only by counsel Anthony Paronich as "*Attorneys for Plaintiff and the Settlement Class.*" See Dkt. 65-5. Because Select Justice did not receive responses to the Subpoenas that were signed by or on behalf of Plaintiffs' relatives, they have arguably waived any objections to the Subpoenas. *See Pons v. Walter Kidde Portable Equip. Inc.*, 2025 U.S. Dist. LEXIS 93919, at \*6 (D. Mass. May 16, 2025) ("'Failure to timely and properly object to the subpoena generally constitutes a waiver of all grounds for objection, including privilege.'") (quoted citation omitted).

Because Plaintiff lacks standing to challenge the Subpoenas and her relatives have not moved for such relief, the Motion may be denied for these reasons alone.

**B.    The Subpoenas Seek Relevant Information Relating To Whether Plaintiff Consented To Receive Calls, Whether She Is An Adequate Class Representative, And Whether Any Alleged Violations Were "Willful"**

The depositions are expected to uncover critical evidence that Select Justice can use to demonstrate that (1) Plaintiff consented to receive calls from Select Justice and is not an adequate class representative; and (2) the alleged violations by Select Justice were not "willful." Moreover, declarations and Facebook activity reports from two of the four relatives (as offered by Plaintiff) are not adequate substitutes for their depositions and browsing histories.

1.    <u>The Discovery Sought Is Relevant To The Issues Of Consent and Plaintiff's Adequacy As Class Representative</u>

The discovery of Plaintiff's relatives is highly relevant to the unique consent defense Plaintiff faces and to whether she is adequate to represent the class.  *See, e.g., Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66, 71-72 (D. Mass. 2023) (consent is complete defense to claim under Section 227(c) of the TCPA); *DeRosa v. Massachusetts Bay Commuter Rail Co*., 694 F. Supp. 2d 87, 100 (D. Mass. 2010) ("Both typicality and adequacy may be defeated where the class representatives are subject to unique defenses which threaten to become the focus of the litigation").  The document requests and depositions are necessary to uncover the identity of the person(s) who provided consent to Select Justice to contact Plaintiff, as well as the circumstances and motivations surrounding the submission of Plaintiff's information.  *See Shammam v. American Honda Fin. Corp.*, 2025 U.S. Dist. LEXIS 197375, at *11 (S.D. Cal. Sep. 25, 2025) (denying motion to quash subpoena served on non-party who purportedly submitted plaintiff's phone number to defendant).

The discovery may also uncover a conflict between Plaintiff's interests, on the one hand, and the interests of the putative class, on the other, given her and/or her relatives' potential liability for possibly manufacturing this TCPA lawsuit. *See id.* at **9-10 (third-party testimony "will bear on the direct financial conflict between Plaintiff's interests and the interests of the class, given the presence of the third-party complaint that threatens to . . . expose Plaintiff and his family to personal liability") (citations omitted); *see also Hirsch v. USHealth Advisors, LLC*, 337 F.R.D 118, 133 (N.D. Tex. 2020) (no typicality in view of counterclaim against plaintiff who allegedly manufactured TCPA claims).

Plaintiff insists her relatives have "no connection" to this case, but she provided no sworn declarations to that effect with her Motion, either from herself[16] or her relatives. Nor did Plaintiff offer a plausible alternative explanation for the connection between the consent forms and her daughter and son-in-law's IP address, or why the person who filled out the Intake Desk consent form initially typed "Sibulesky" before replacing it with "Teman." Although she accuses Select Justice of procuring the consent forms by "fraud," there is no evidence of that, and Mr. Valdez's declaration establishes that Select Justice obtained the consent forms through its standard lead collection process.[17] Because Select Justice has "connected the dots" between

---

[16] Plaintiff's statement in her June 2025 declaration that she "spoke with [her] daughter" who purportedly denied providing Plaintiff's information to Select Justice is inadmissible hearsay. *See* Dkt. 40-1, ¶ 8.

[17] Plaintiff highlights the fact that Facebook failed to produce any documents in response to a subpoena served on it in this case. *See* Dkt. 65 at 6. However, she failed to attach the "informal[]" communications her counsel purportedly exchanged with Facebook's counsel regarding the subpoena, and has failed to provide the same despite Select Justice's counsel's request. *See id.*, at fn. 2. Regardless, even assuming Facebook no longer has relevant information regarding the consent forms, there could be multiple explanations for why that is the case, including its data retention policy, among others.

Plaintiff also complains that the lead information regarding Plaintiff was "not produced in native

the consent forms and Plaintiff's relatives, the Court should allow the discovery process to proceed and provide the parties with more fulsome information. *Dmitriev*, 2022 U.S. Dist. LEXIS 251977 at *15.

Plaintiff also argues that the discovery sought is "irrelevant" because it would not show that "[she] herself authorized Select Justice to contact her." Dkt. 65 at 12. But Select Justice is not obligated to accept Plaintiff's word, and it is entitled to develop the evidence firsthand. Indeed, discovery might reveal that Plaintiff encouraged or allowed her relatives to submit her information on her behalf, which is equivalent to providing the necessary consent under the TCPA.[18]

*Shammam* is directly on point. There, plaintiff sued American Honda Finance Corporation for alleged TCPA violations after a non-party purportedly submitted plaintiff's phone number to Defendant as part of a lease credit application. *Shammam*, 2025 U.S. Dist. LEXIS 197375, at *3. Defendant served a subpoena seeking the deposition of Plaintiff's father-in-law, Noori Barka, to question him about his knowledge of the lease transaction and other information relating to the suit. The non-party moved to quash Defendant's subpoena, and the court denied the motion stating as follows:

> "[T]he deposition is relevant to Defendant's contentions that Plaintiff (i) manufactured his TCPA and CIPA claims, (ii) consented to the telephone calls at issue, and (iii) is not an adequate class representative, in part due to alleged financial conflicts between his interests, his family's financial interests, and the interests of the class . . . While Dr. Barka may assert that he has no relevant knowledge, Defendant is entitled to explore that assertion in a short deposition."

---

format." Select Justice has since produced native files containing the lead and call data regarding Plaintiff that is maintained in Select Justice's database.

[18] *See e.g.*, *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1253 (11th Cir. 2014) (noting housemate can provide consent to receive calls on plaintiff's behalf under an agency relationship); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 280 (M.D. Fla. 2019) ("[A] party may also establish consent pursuant to the TCPA under agency law principles.").

*Id*., at **9-10.  The same outcome should follow here.

Finally, the case relied upon by Plaintiff—*Mantha v. Quotewizard.com, LLC*, 2021 U.S. Dist. LEXIS 245059 (D. Mass. Dec. 3, 2021) (Report and Recommendation on Cross-Motions for Summary Judgment), adopted by and objection overruled 2022 U.S. Dist. LEXIS 19502 (D. Mass. Feb. 3, 2022)—is distinguishable and supports <u>denial</u> of Plaintiff's Motion.  There, the court granted partial summary judgment for plaintiff on the issue of consent, in part because the IP addresses associated with the consent forms were from "random individuals who had no connection to plaintiff and who had never visited [defendant's] website."  *Id*. at *18.  Here, in stark contrast, the IP address associated with the consent forms received by Select Justice belongs to Plaintiff's daughter and son-in-law, not to "random individuals."

> 2. <u>The Discovery Sought Is Relevant To Plaintiff's Allegation That Select Justice's Alleged Violations Were "Willful"</u>

The discovery sought is also necessary to rebut Plaintiff's allegations that Select Justice "purchased" leads from third parties and "willfully" violated the TCPA.  *See* Dkt. 1, ¶ 40; Dkt. 65 at 4.  At a bare minimum, the discovery is expected to confirm that Plaintiff or one of her relatives submitted Plaintiff's information to Select Justice, giving rise to Select Justice's good faith belief that it had consent to contact Plaintiff.  *See Mantha*, 2021 U.S. Dist. LEXIS 245059, at *27 ("good faith defense to TCPA violations [] may be relevant in the context of damages for willfulness," even if "defense should not be recognized as relieving defendant from liability for contacting plaintiff in violation of the TCPA").  This discovery is particularly relevant given Plaintiff's assertion that Select Justice procured the consent forms through "fraud."  *See* Dkt. 65 at 2.

13

### 3. Declarations And Facebook Activity Reports Are Not Proper Substitutes For The Relatives' Depositions And Documents

In view of the evidence, Select Justice is entitled to depose Plaintiff's relatives regarding their knowledge of the events giving rise to Plaintiff's claims, and obtain any relevant documents in their possession.[19] Declarations, which will likely be carefully-crafted by counsel for Plaintiff, are not suitable replacements for live testimony subject to cross-examination or the relatives' actual browsing histories which may reveal, for example, visits to Select Justice's website around the time of the two consent form submissions.

Nor is the Plaintiff's offer to provide Facebook activity reports for Stacey and Dan Sibulesky a proper substitute for their depositions and any other relevant documents they may possess.[20] Any Facebook user can easily stop Facebook's tracking of their "off Facebook" activity and delete all record of their prior off Facebook browsing.[21] Depending on their privacy settings, those reports may not reveal their complete browsing activity during the relevant period.[22] The relatives may also possess relevant information that would not appear in those reports.

---

[19] As stated, Select Justice has withdrawn without prejudice the deposition notices as to the Tamms. However, the Tamms remain obligated to respond to Select Justice's document requests in the Subpoenas. If document discovery or depositions of the other relatives suggest that the Tamms may be involved or have relevant information, Select Justice reserves the right to re-notice their depositions.

[20] Plaintiff did not offer to provide Facebook activity reports for Glenn Teman, Kerry Tamm, or Terence Tamm.

[21] *See, e.g.*, "Disconnect your past activity off Meta technologies" https://www.facebook.com/help/287199741901674?helpref=faq_content (last accessed Nov. 30, 2025)

[22] Facebook's own information page relating to the activity report advises that "not all [user] activity will show" in the report. See Review your activity off Meta technologies | Facebook Help Center.

14

### C. The Subpoenas To Plaintiff's Relatives Do Not Impose An Undue Burden

The party seeking to quash a subpoena bears the burden of showing that compliance would impose an undue burden. *See Green v. Cosby*, 152 F. Supp. 3d 31, 36 (D. Mass. 2015). Under Rule 45(d)(3)(A), this Court must "consider[] issues such as relevance, the requesting party's need, the breadth of the request, and the burden imposed when analyzing whether a subpoena places an undue burden on a nonparty." *Id*. Plaintiff's relatives (not Plaintiff, herself) must show that compliance would impose an undue burden, but here, the relatives have submitted no evidence with the Motion to support the burden argument – indeed the Motion was not even submitted by the relatives, as previously stated.

Even assuming, *arguendo*, that the relatives were the actual parties moving to quash their subpoenas, they "cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance." *Id*. at 36-37. On its face, the threadbare proclamations of "undue burden" contained within the Motion fails to meet this burden. The Motion is not supported by sworn declarations or other evidence that the depositions will cause any undue burden. That the depositions may cause "stress[]," will require Plaintiff's relatives to take time away from work and other obligations, and require travel less than 25 miles[23] from their homes is not sufficient to demonstrate "undue burden." *See, e.g.*, *Lawless v. Town of Freetown*, 2024 U.S. Dist. LEXIS 97017, at *3 (D. Mass. May 30, 2024) (motion to quash denied despite non-party witness' claim he had a medical condition that made traveling "burdensome" and "painful"); *Marine Polymer Techs., Inc. v. HemCon, Inc*., 2010 U.S. Dist. LEXIS 43361, at **5-6 (D.N.H. Apr. 5, 2010)

---

[23] A distance that is half as far as would be permitted under Massachusetts state procedure, *see* Mass. R. Civ. P. 45(d)(2), and one-fourth the distance allowed under the Federal Rules, *see* Fed. R. Civ. P. 45(c)(1)(A). Moreover, Local Rule 30.1 provides that Boston is a convenient location for the depositions of the relatives, all of whom reside in Middlesex County.

15

(non-party witness responsible for caring for spouse following surgery would not be unduly burdened by his deposition); *U.S. v. Condron*, 2020 U.S. Dist. LEXIS 101203, at *4 (D. Mass. June 9, 2020) ("emotional burden" is insufficient to warrant quashing the subpoena).

On the other hand, Select Justice has demonstrated that the family members' testimony is highly relevant to the claims and defenses in this action, including Plaintiff's adequacy to represent a class that seeks significant monetary recovery. Select Justice has also demonstrated that the breadth of the requested discovery is narrow. Indeed, if the web browsing and search histories over a 20-day period are irrelevant and Plaintiff's relatives do not have any additional information, then their depositions will be brief.

### D. The Court Should Deny Plaintiff's Alternative Request To Strike Document Requests 10 And 11 Relating to Browsing History

The relatives' online browsing and search histories around the time of the consent form submissions are a critical piece of the digital puzzle. For example, to the extent there is evidence the relatives visited Select Justice's website or Plaintiff's counsel's websites or searched "TCPA class actions," that information is relevant to prove whether they provided Select Justice consent to contact Plaintiff and why. If the history of a website visit to Select Justice's webpage itself was not preserved, but data of searches relating to rideshare litigation and assaults days earlier still exists, that revelation would certainly warrant further inquiry. Additionally, if the relatives' browsing histories had been deleted after their duty to preserve that data arose, that information would be relevant to their credibility and to support a possible spoliation argument.

Specifically with respect to these two requests and in addition to proposing a protective order, Select Justice has significantly narrowed the scope of Document Requests 10 and 11 to seek limited browsing history around the relevant period:

- No. 10 – For each device that YOU have used to access the internet and/or Facebook (n/k/a Meta) between ~~September and December~~ October 10 - 31, 2023, including but not limited to any smart phone, laptop, desktop, or tablet, produce ~~all~~ DOCUMENTS and electronically stored information, including DIGITAL FOOTPRINT EVIDENCE, ~~evidencing~~ sufficient to show YOUR complete web browsing history during such time period.

- No. 11 – In lieu of responding to Request No. 10, above, produce each device that YOU have used to access the internet and/or Facebook (n/k/a Meta) between ~~September and December~~ October 10 - 31, 2023, and permit SELECT JUSTICE or its representative(s) to conduct inspection, copying, testing, and/or sampling of the device's electronically-stored information, including DIGITAL FOOTPRINT EVIDENCE, during that time period.

These requests—which are made in the alternative—balance Select Justice's need for the information and the relatives' concerns about privacy. Accordingly, Select Justice is entitled to this information considering its unique relevance and the narrow scope of the request. *See Mantha v. QuoteWizard.com, LLC,* 2020 U.S. Dist. LEXIS 135257, at *10 (D. Mass. July 29, 2020) (allowing discovery into TCPA plaintiff's "browser and search history").

  E.  **The Court Should Deny Plaintiff's Other Requests For Relief**

First, regarding Plaintiff's request to limit the depositions to 1-hour, a time limit should not be imposed given the unpredictable nature of depositions and uncertainty as to whether some relatives may possess significantly more or less relevant information than others. That said, Select Justice does not expect any of the depositions to last more than four hours, and likely far less if the individual deponent lacks relevant information.

Second, the Court should also not require that the depositions be conducted via videoconference (as opposed to in person). It is customary that the party noticing the deposition can elect whether it will occur in person or remotely, absent good cause to override that election, and Local Rule 30.1 provides that "[u]nless the court orders otherwise, (a) Boston is deemed a convenient place for taking of a deposition of any person who resides, is employed, or transacts business in person in Suffolk, Bristol, Essex, Middlesex, Norfolk or Plymouth Counties." L.R.

17

30.1. Here, all of the witnesses reside in Framingham (Middlesex County), which is less than 25 miles from Select Justice's counsel's Boston office. Additionally, Select Justice's counsel has already expressed willingness to schedule the depositions at times convenient for the deponents to avoid rush hour traffic, if they desire. Finally, remote depositions typically pose logistical challenges that may only prolong the depositions, particularly if questions relate to exhibits or ESI in native format.

Third, the Court should deny the request to limit the scope of the depositions to "[Plaintiff's] consent and the calls at issue." Although the relatives' depositions will certainly focus heavily on the consent forms and the calls at issue, their testimony might reveal other lines of questioning that bear on Plaintiff's adequacy as class representative. Additionally, such a limitation would unreasonably restrict Select Justice's discovery into relevant web browsing or search histories, or other topics likely to lead to discoverable information.

Finally, even if the Court grants the Motion (it should not), the Court should deny Plaintiff's (and/or her relatives') request for attorneys' fees and costs in connection with Plaintiff's Motion because Select Justice's actions in seeking discovery from Plaintiff's relatives and opposing the Motion were "substantially justified" in view of the evidence suggesting the relatives' potential involvement in the submission of the consent forms, as discussed above. Fed. R. Civ. P. 37(a)(5)(A).

## V.   CONCLUSION

For each of the forgoing reasons, Plaintiff's Motion should be denied in its entirety.

Dated: December 5, 2025

        Respectfully submitted,

        SELECT JUSTICE, LLC,
        By its counsel,

        */s/ Michael K. Lane*
        Michael K. Lane, BBO# 673501
        Womble Bond Dickinson (US) LLP
        470 Atlantic Avenue, Suite 600
        Boston, MA 02210
        (857) 287-3160
        michael.lane@wbd-us.com

        Jeffrey A. Topor (admitted pro hac vice)
        Tomio B. Narita (admitted pro hac vice)
        Michelle Catapang (admitted pro hac vice)
        Womble Bond Dickinson (US) LLP
        50 California Street Suite 2750
        San Francisco, CA 94111
        Jeff.Topor@wbd-us.Com
        Tomio.Narita@wbd-us.Com
        Michelle.Catapang@wbd-us.Com

## CERTIFICATE OF SERVICE

I, Michael K. Lane, hereby certify that on this 5th day of December, 2025, I caused the foregoing pleading to be served upon the following known counsel by email, and through the Court's CM/ECF notification system:

Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA
anthony@paronichlaw.com

        */s/ Michael K. Lane*
        Michael K. Lane, BBO# 673501

WBD (US) 4900-5333-9258