UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **EMILY TEMAN**, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>**SELECT JUSTICE, LLC**,<br><br>      Defendant. | No. 1:24-cv-12656-LTS |

**EMILY TEMAN AND HER NON-PARTY FAMILY MEMBERS' REPLY IN SUPPORT OF THEIR MOTION TO QUASH OR MODIFY SUBPOENAS AND FOR A <u>PROTECTIVE ORDER</u>**

0

**INTRODUCTION**

From the outset, Emily Teman has maintained that Select Justice's so-called "leads" are a fraud, and not one perpetrated by her. The "leads" have all the markings of forms thrown together by someone that does not know her: an email address that does not belong to her, commentary written in broken-English not written by her, and an IP address that is not hers. The evidence Select Justice attaches to its response only bolsters the point. Now Select Justice has shown whoever filled out its "leads" and those from another company confused who it was trying to submit, entering "Emily Sibulesky" in one—combining Ms. Teman's name with her daughter's, Stacy Sibulesky—to identify a person that does not exist. And because errors permeate these "leads," Select Justice has retreated from claiming Ms. Teman or a family member created them, now saying only that "someone" did. ECF 71, at 5.

For that reason, Plaintiff's counsel has urged that the Parties first investigate the leads' origin and authenticity before dragging Ms. Teman's family into a TCPA case they know nothing about. But Select Justice refuses because it knows casting a dragnet on Ms. Teman's family tree may leverage Ms. Teman to drop her case. And Select Justice gives away the game by including relatives it has *no reason* to believe would know anything about this case, including Mr. Tamm and Ms. Tamm who have no established connection to any issue at stake. Meanwhile, Select Justice is hiding the ball on how its leads were created, mentioning only that it "obtained the consent forms through its standard lead collection process" without explaining what that means. ECF 71, at 11. The Court should not allow this duplicity: at minimum, the Parties agree that Select Justice's "lead collection process" is core to the issues before the Court, and the Parties should complete discovery on it before allowing Select Justice to cast a dragnet on Ms. Teman's family tree.

As a result, the Court should grant Ms. Teman's motion for two reasons. ***First***, Select

1

Justice and its vendor have yet to cooperate in producing all "lead" evidence demanded—and Ms. Teman's family should not be dragged in until it does. And *second*, Ms. Teman's family has standing to object because they are objecting themselves, not through Ms. Teman.

## ARGUMENT

No third party allegedly involved has corroborated Select Justice's "lead" evidence, as Facebook confirmed it "cannot identify any records associated with the click IDs in this matter." Exhibit A. Assuming arguendo that these click IDs are legitimate, their very existence would mean Facebook collected the underlying data and then transmitted it to Select Justice (or LeadClient). If the alleged consent truly originated from a Facebook Rideshare ad, Facebook would have produced evidence confirming exactly that.

Because Select Justice knows there is something fundamentally wrong with its "leads," it tries to shift the focus to Ms. Teman's family. While Select Justice claims that declarations are not adequate substitutes for depositions and browsing histories, it simultaneously complains that Plaintiff's family members have "provided no sworn declarations." ECF 71, at 10-11. Yet declarations *were offered* to Select Justice as part of a compromise, which Select Justice declined. ECF 65-6, at 2-3. All five family members have now submitted declarations to this Court, which are attached to this Reply as Exhibits B through F. In the declarations, Ms. Sibulesky, Mr. Sibulesky, Mr. Teman, Ms. Tamm, and Mr. Tamm expressly deny ever providing Ms. Teman's information to Select Justice through its Facebook advertisements or otherwise, from their own residence or from anywhere else. Exs. B-F, ¶ 6. They also swear that if someone did in fact provide Ms. Teman's contact information to Select Justice, they don't know who did. *Id.*

Tellingly, Select Justice refuses to pursue the Facebook Activity Reports, the most direct source of evidence to confirm or refute its claims (aside from Facebook itself). Plaintiff offered a

2

straightforward compromise: withdraw the deposition notices of Ms. Teman's children, without prejudice, in exchange for their declarations and the Facebook Activity Reports of Mr. Sibulesky and Ms. Sibulesky. Plaintiff even invited Select Justice to propose adjustments to address concerns it may have about the Sibuleskys' Facebook privacy settings.[1] Select Justice declined. While Select Justice claims that the Facebook Activity Reports might be incomplete, citing Facebook's information page (ECF 71, at 14), Select Justice omits the limited circumstances Facebook identifies where a user's activity may not appear.[2] The noted exceptions would not conceal what Select Justice claims happened here—that Ms. Teman's consent was submitted through Select Justice's Rideshare advertisement on Facebook, from an IP address connected to the Sibuleskys' residence, generating unique click IDs. If Ms. Sibulesky or Mr. Sibulesky clicked on the Rideshare advertisement on Facebook, their Facebook Activity Report would show it. That Select Justice does not want to view them speaks volumes.

    In other words, Select Justice is not seeking the truth, it is seeking to leverage Ms. Teman by burdening her family. In a last-ditch attempt to justify rejecting Plaintiff's family's reasonable compromise, Select Justice speculates "the relatives may also possess relevant information that would not appear in those reports." ECF 71, at 14. But Select Justice never clarifies what evidence that would be. Such speculation cannot meet Select Justice's burden to justify intrusive discovery from five non-parties, particularly where Select Justice has not identified a connection between Mr. Tamm, Ms. Tamm, or Mr. Teman and this case beyond their relationship to Plaintiff.

    Even so, Mr. Teman agreed to sit for a deposition in Framingham, MA, or by video. And

---

[1] *See, e.g.,* ECF 65-6 at 3 ("To the extent you are concerned about their privacy settings, please let us know what clarification would address those concerns.").

[2] See https://www.facebook.com/help/2207256696182627. According to Facebook, activity may be missing when: (1) the data is too recent to have populated; (2) it cannot confirm the activity came from a device associated with the user; (3) it disconnected the activity from the account for technical reasons; or (4) the activity concerns "Meta Quest" data.

recently, after Select Justice agreed to narrow the scope of two document requests to cover 21 days, Mr. Sibulesky, Ms. Sibulesky, and Mr. Teman agreed to produce their devices for forensic examination during that time period (subject to a protective order and search protocol, which the Parties are discussing). Mr. Tamm and Ms. Tamm, however, do not agree to sit for deposition or respond to document requests, because Select Justice has shown no connection between them and the supposed consent form. ECF 72-1 at 2, 7. Select Justice implicitly concedes this point by withdrawing the Tamms' deposition notices, yet it still demands their browsing histories and devices simply because "it is possible that they submitted the leads during a visit to the Sibulesky residence." *Id.* But possibility is not evidence. By that logic, Select Justice could just as easily subpoena a neighbor or any guest who ever set foot in the home on the theory that they might have filled out the form. That is not the standard, and it falls far short of the showing required to justify dragging five uninvolved non-parties into depositions and burdensome discovery.

Select Justice cites *Shammam v. American Honda Fin. Corp.*, 2025 U.S. Dist. LEXIS 197375 (S.D. Cal. Sep. 25, 2025) in support of its position, but that case is not comparable. There, the plaintiff's number was provided to defendant by a non-party, ILS Labs, on a vehicle lease, and there was no dispute about the lease's authenticity. *Shammam*, 2025 U.S. Dist. LEXIS 197375, at *3-4. When ILS Labs failed to make payments, the plaintiff received the default calls. *Id.* The court denied the president of ILS Labs' motion to quash, considering his position in the company, and also because the defendant had "difficulty in ascertaining basic facts from other witnesses," but nevertheless limited the scope and duration of the deposition given the president's non-party status. *Id.* at *10.[3] Here, the supposed consent comes from questionable digital "evidence" and family members who deny providing it, and "basic facts" can be discovered from Dax Valdez and

---

[3] The court also positively noted defendant agreed to depose Dr. Barka "at whatever location is most convenient for him," eliminating any claim of undue burden, yet Select Justice has made no similar accommodations.

4

LeadClient before Ms. Teman's family is involved. Indeed, if Select Justice's lead data is erroneous or fraudulent, deposing family members and seizing devices cannot resolve the underlying issue.

Finally, Select Justice's standing argument is without merit. Its claim that the Motion to Quash was brought on behalf of Plaintiff only because it was signed by "Alex Phillips as Attorneys for Plaintiff," ignores the Motion's title, substance, and the Parties' own communications. Select Justice has always known that Plaintiff's counsel represents her family members. Counsel accepted service of the subpoenas on their behalf (ECF 65 at 8), and Select Justice never once raised this "standing" objection during multiple meet-and-confers because it had no good-faith basis for it. *Boaz v. FE Express,* LLC, 2016 U.S. Dist. LEXIS 62211, at **4-5 (E.D. Mo. May 11, 2016) does not help Select Justice either. There, the defendant moved to quash a subpoena directed at its former employee, but the motion was plainly filed on the defendant's behalf only. *Id.* at *4-5.[4] Here, the Motion to Quash was brought on behalf of Plaintiff *and* her family members from the outset. For avoidance of doubt, each family member has submitted a declaration confirming that they retained Plaintiff's counsel and authorized Plaintiff's counsel to file the Motion to Quash on their behalf because they are the individuals whose rights are implicated by the subpoenas.

For these reasons, the Court should limit Select Justice's discovery as follows: <u>First,</u> the Court should require the Parties to conduct discovery into the origin of the leads before permitting intrusive discovery into the private lives of non-parties. <u>Second,</u> the Court should quash the deposition notices on Ms. Teman's children and their spouses. <u>Third,</u> the Court should quash all Document Requests to the Tamms. And <u>fourth</u>, the Court should order Select Justice to depose Plaintiff and Mr. Teman back-to-back on the same day via videoconference or in person in Framingham, MA, and limit Mr. Teman's deposition to two hours.

---

[4] The motion was unambiguously titled: "Defendant FE Express, LLC's Motion to Quash and Objections to Plaintiff Daniel Boaz' Subpoena to Amel Sinanovic." ECF No. 16.

Dated: December 15, 2025

Respectfully submitted,

By: */s/ Alex Phillips*
  Alex Phillips *(pro hac vice)*
  Samuel J. Strauss *(pro hac vice)*
  **STRAUSS BORRELLI PLLC**
  980 N. Michigan Ave., Suite 1610
  Chicago, IL 60611
  Telephone: 872-263-1100
  Facsimie: 872-263-1109
  aphillips@straussborrelli.com
  sam@straussborrelli.com

  Anthony I. Paronich
  **PARONICH LAW, P.C**.
  350 Lincoln Street, Suite 2400
  Hingham, MA 02043
  Telephone: 508-221-1510
  anthony@paronichlaw.com

  *Attorneys for Plaintiff and third-party subpoena respondents*

6

## CERTIFICATE OF SERVICE

I hereby certify that, on December 15, 2025, I served the foregoing through the Court's CM/ECF system, which sent notice to all counsel of record.

*/s/ Alex Phillips*
Alex Phillips *(pro hac vice)*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: 872-263-1100
Facsimie: 872-263-1109
aphillips@straussborrelli.com
