IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMILY TEMAN, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SELECT JUSTICE, LLC,<br><br>    Defendant. | Civ. No. 1:24-cv-12656-LTS |

**JOINT LETTER RE: DISCOVERY DISPUTE OVER SEARCH AND COLLECTION PROTOCOL FOR DEVICE INSPECTIONS**

Pursuant to the Court's instructions during the hearing on Plaintiff's Motion to Quash or Modify Subpoenas, on December 17, 2025, Plaintiff Emily Teman ("Plaintiff") and Defendant Select Justice, LLC ("Defendant") (together, the "Parties") hereby respectfully submit a Joint Letter concerning disputed discovery issues that generally fall into three categories: (1) the scope of the search terms to be used for the device inspections of Plaintiff and her relatives; (2) whether the search results should be simultaneously disclosed to the Parties' respective counsel, or whether Plaintiff's counsel is entitled to a responsiveness and privilege review before the data is disclosed to Defendant's counsel; and (3) whether responsive ESI from the devices (potentially demonstrating that Plaintiff's TCPA claims were manufactured) may be used in a future action. The Parties, through counsel, have conferred extensively via email regarding these issues but have reached an impasse. The Parties therefore request a ruling or guidance from the Court regarding these issues and summarize their respective positions below. Counsel for all parties are available to appear on <u>January 28, 2026</u>; <u>February 4, 2026 (10:00 a.m. – noon)</u>; <u>February 5, 2026 (10:00 a.m. – noon)</u>; or at such other time as is convenient for the Court.

**ISSUE NO. 1:** The scope of the search terms to be used for the device inspections of Plaintiff and her relatives.

**Defendant's Position:** Briefly by way of background, Defendant initially requested to inspect all online search and browsing history contained on the electronic devices of Plaintiff and her relatives, between September 1, 2023 and December 31, 2023. After Plaintiff and her relatives objected and the parties conferred, Defendant agreed to narrow the temporal scope of the search to October 10 – 31, 2023, and to narrow the search and browsing history to ESI relating to 1) rideshare assault and the lead submissions received by Defendant, 2) the InTake Desk lead submission[1] from the same IP address days after the lead submissions received by Defendant, and 3) evidence that the lead submissions were made for purposes of manufacturing a TCPA claim, such as search and browsing history leading up to the date of the lead submissions relating to TCPA claims, litigation, and attorneys who prosecute TCPA claims. Through emails exchanged in early December, 2025, the parties reached an agreement as to this narrowed scope conceptually, but had not exchanged a list of specific search terms and websites. During the December 17th hearing, the Court allowed Defendant to inspect the devices of Plaintiff, Glenn Teman (Plaintiff's husband), Stacey Sibulesky (Plaintiff's daughter), and Daniel Sibulesky (Plaintiff's son-in-law), and ordered the Parties to confer regarding an appropriate search and collection protocol. As part of that process, Defendant proposed a list of websites and search terms designed to identify information relevant to the litigation including rideshare assault and the lead submissions, the InTake Desk lead submission, as well as TCPA litigation and attorneys who prosecute such claims. The Parties dispute the scope of those search terms.

Plaintiff objects to three categories of websites and search terms: a) websites owned by Select Justice ("Select Justice Websites"); b) websites and search terms relating to Intake Desk ("Intake Desk Website/Terms"); and c) websites and search terms relating to TCPA litigation and Plaintiff's counsel ("TCPA & Attorney Terms").[2] As explained further below, however, each of these websites and terms are reasonably calculated to discover whether Plaintiff and/or her relatives have some connection to the lead submissions received by Defendant, and whether any one of them manufactured this litigation.

Each of the disputed Select Justice Websites are among the websites used by Defendant to obtain leads as part of its Rideshare Assault Campaign, as explained in Defendant's expert report and supporting declaration from Defendant's Chief Operating Officer Dax Valdez.[3] Any evidence

---

[1] The Trusted Form Certificate produced by LeadClient includes a session reply video wherein the person submitting the form from the IP addressed associated with Plaintiff's daughter, Stacy Sibulesky, types the name "Sibulesky" into the "last name" field on the form, then deletes that entry and types "Teman" into the form instead. That session reply video can be viewed at the following link: TrustedForm Certificate ebb38b652227e8448c2a183b84943c8df8db34c4

[2] The most recent version of Parties' disputed search terms and websites are listed in **Attachment A**.

[3] Although Plaintiff agreed to include some of Select Justice's websites in the search protocol, Plaintiff specifically objected to those websites that do not reference rideshare litigation in their domain names. However, because each of these websites were used by Defendant as part of the

2

indicating that Plaintiff and/or her relatives visited any of these websites around the same time Defendant received Plaintiff's lead information would suggest that one of them must have submitted Plaintiff's information to Defendant.

The Intake Desk Website/Terms could reveal a connection between Plaintiff and/or her relatives, on the one hand, and the lead submissions received by third-party Intake Desk, on the other.[4] Because the lead submissions received by Intake Desk and Defendant occurred around the same timeframe and originated from the same IP address, evidence suggesting that Plaintiff (or her relatives) was responsible for the lead submission to Intake Desk strongly suggests that the same individual was responsible for the lead submissions to Defendant.

As for the TPCA & Attorney Terms, evidence showing that Plaintiff and/or her relatives researched TCPA claims or visited Plaintiff's counsel's websites or searched their names <u>before</u> Defendant allegedly called Plaintiff is also highly compelling evidence suggesting that Plaintiff (or her relatives) plotted to manufacture a TCPA claim against Defendant.

The device inspections are already narrow in scope, covering only a brief window surrounding the lead submissions relating to Plaintiff and a set of specific search terms. If Defendant's proposed website and search terms reveal no hits, then there is no harm to Plaintiff. By contrast, if Plaintiff is permitted to further restrict the scope of the proposed search, then Defendant would potentially be deprived of highly relevant information as discussed above. The balance of these interests strongly weighs in favor of Defendant's proposed scope.

For the reasons stated, Defendant requests a ruling or instruction from the Court that the Parties adopt the list of websites and search terms in **Attachment B**, which contains the websites and terms previously agreed upon by the Parties and the disputed terms in **Attachment A**.

**Plaintiff's Position**:

Defendant's expert report identifies a single source of Plaintiff's information: **https://rideshare.justicehere.com**.[5] That site is therefore the only website reasonably calculated to test Defendant's contention that Plaintiff or her relatives submitted the lead at issue. All related activity can be captured by adding the root expander (!) to the end of the website. Although expanding discovery beyond that site is not supported by Defendant's own theory or its expert's

---

Rideshare Assault Campaign it makes no difference that their domain names lack any reference to rideshare litigation.

[4] The disputed website "https://freelegalreviews.com/talcumpowder" is the same website associated with the lead submission received by Intake Desk. See ECF No. 73-4 (Trusted Form Certificate produced by Intake Desk).

[5] The Expert Report of Select Justice's expert Madelyn Moran states: "Select Justice received the telephone number (508) 877-6625 (the "6625 number") via webform submission at http://rideshare.justicehere.com on October 20, 2023 and October 28, 2023. The name submitted with both of these leads was Emily Teman."

analysis, Plaintiff nevertheless agreed to a substantially broader protocol in order to accommodate Defendant's discovery requests. As reflected in counsel's November 25, 2025 correspondence, Plaintiff proposed that a neutral third-party forensic examiner review devices and produce responsive data relating to Select Justice and its rideshare litigation, including visits to Select Justice's website, interaction with Select Justice-related Facebook advertisements, and other data reflecting exposure to or interaction with Select Justice. From the start, Plaintiff maintained: "To be clear, we will not be producing any internet history or browsing data unrelated to this case[.]"[6] That compromise remains Plaintiff's position. The chart below illustrates the scope of the dispute.

| Plaintiff agrees to the following terms: | Plaintiff does not agree to the following terms: |
| --- | --- |
| Uber | Lawsuit |
| Lyft | Legal |
| Rideshare | Litigation |
| Ride /s share | Settlement |
| Assault! | Claim! |
| Sex /s (assault OR harass! OR claim) | Lawyer |
| TCPA | Attorney |
| "telephone consumer protection act" | Paronich |
| Unwanted /s (call! OR market! OR ad! OR touch!) | Phillips |
| | Strauss |
| Do /s not AND call | Borrelli |
| Telemarketing | Talc! |
| Spam /s calls | Intake /s desk |
| Lead /s generator | Intakedesk |
| Telephone /solicitation | https://freelegalreviews.com/talcumpowder! |
| Consumer /s protection | https://go.justicehere.com! |
| Class /s action | https://www.confidentialcasehelp.com! |
| Lead /s client | https://elmiron.injurymatch.com! |
| Select /s justice | https://www.justicehere.com! |
| Justice /s here | https://justiceadvocates.com! |

---

[6] The quote is pulled from Plaintiff's counsel's Nov. 25, 2026 correspondence, in which she stated: "We propose that a third-party forensic expert conduct the examination of the devices used by Ms. Teman, Ms. Sibulesky, and Mr. Sibuleksy to access the internet and/or Facebook (a/k/a Meta) between October 10 - 31, 2023, and that the expert produce any responsive data related to Select Justice and its rideshare litigation, such as visits to Select Justice's website; any review, engagement or interaction with Facebook ads related to Select Justice; and any other data reflecting exposure to or interaction with Select Justice during the agreed upon time period. To be clear, we will not be producing any internet history or browsing data unrelated to this case, and any production with history will have unrelated information redacted. In this way, we hope to strike a balance between protecting the privacy of our clients, while still providing responsive, verifiable data, to the extent it exists."

WBD (US) 4908-6117-6202

| | |
|---|---|
| https://www.facebook.com! <br> https://rideshare.justicehere.com! <br> https://rideshareassualtsupport.com! <br> https://www.rideshareassaultsupport.com! <br> https://www.selectjustice.com/! <br> https://freelegalreviews.com/lps/rideshare! <br> https://www.rideshareassaultsupport.com! <br> https://www.goldwaterlaw.com/rideshares | https://thejusticeadvocates.com! <br> https://www.paronichlaw.com/! <br> https://www.straussborrelli.com! <br> https://justiceherenow.com! |

As shown above, Plaintiff agreed to all search terms that include Select Justice, Facebook, and rideshare assault, and even search terms related more broadly to the TCPA. However, search terms like "claim," "lawsuit," "settlement," and others would sweep in irrelevant material, converting the device inspection into a fishing expedition into Plaintiff's and nonparties' private affairs. Likewise, many of the proposed websites have no discernable connection to rideshare assault litigation or to Defendant's Facebook rideshare assault campaign, including Plaintiff's counsel's law firm websites, generic lead-generation sites, and websites involving unrelated litigation (*e.g.* https://www.confidentialcasehelp.com involves litigation against the Mormon Church). Defendant offers no specific explanation for why visits to these websites could show that Plaintiff or her family provided Ms. Teman's consent to be contacted through **https://rideshare.justicehere.com**, or manufactured a TCPA claim against Defendant, as opposed to reflecting wholly unrelated internet activity.

Defendant's argument that there is "no harm" if the search yields no hits misses the point. The harm lies in the scope of the intrusion itself, particularly where the inspection involves the devices of willing non-party family members. Rule 26 requires proportionality and tailoring at the outset, not a promise that irrelevant data might later be ignored. Because Defendant's proposal is unsupported by its own expert analysis, and not reasonably calculated to lead to admissible evidence, it should be rejected. Plaintiff requests that this court adopt the list of search terms included in **Attachment C.**

**ISSUE NO. 2:** Whether the search results should be simultaneously disclosed to the Parties' respective counsel, or whether Plaintiff's counsel is entitled to a privilege and responsiveness review before the data is disclosed to Defendant's counsel.

**Defendant's Position:** Given the narrow temporal scope and proposed search terms, any ESI that hits on the Parties' agreed upon search parameters ("Responsive ESI") is responsive and should be simultaneously provided by the third-party vendor engaged to perform the inspections to Plaintiff's and Defendant's attorneys under an "Attorney's Eyes Only" confidentiality designation. Plaintiff's counsel will then have an opportunity to propose redactions to any portion of the Responsive ESI that is otherwise irrelevant or sensitive, to which Defendant's counsel may object as appropriate. This approach ensures the integrity of the process, while also providing a mechanism for preventing disclosure of irrelevant and sensitive data.

Through emails exchanged in early December, 2025, Plaintiff agreed to Defendant's proposal that the third-party vendor would produce the Responsive ESI to both parties and Plaintiff would then have an opportunity to designate any responsive but potentially irrelevant or sensitive ESI as "Attorney's Eyes Only". Plaintiff now insists on conducting a privilege and responsiveness review prior to Defendant receiving any of the Responsive ESI.[7] The Court should reject this proposal. First, there is no basis for a privilege review because Plaintiff has not articulated any scenario by which Plaintiff or her family members' ESI from October, 2023 could be privileged, as it would (presumably) predate any legal engagement and, in any event, a google search for TCPA lawyers or a visit to a law firm's website does not convey privileged legal advice.

Nor is Plaintiff's counsel entitled to act as gate-keeper by filtering the Responsive ESI disclosed to Defendant's counsel according to what Plaintiff's counsel deems in their sole view is relevant. As previously stated, any ESI that hits on the narrow search terms is responsive. The fact that the Parties' dispute whether TCPA & Attorney Terms are relevant suggests that Plaintiff may also disagree about the relevance of the Responsive ESI, and thus Plaintiff's proposal could potentially deprive Defendant of relevant information. For example, in line with Plaintiff's argument that "litigation", "settlement" and "Paronich" should be excluded among the list of search terms, Plaintiff's counsel could deem ESI unresponsive despite showing that Plaintiff or her relatives googled TCPA litigation and settlements and visited her current counsel's website in October 2023 prior to the lead submissions or any phone calls from Defendant to the Plaintiff. This ESI would be highly relevant to support Defendant's belief that the leads were submitted to manufacture a TCPA claim, but under Plaintiff's proposed method, that ESI could be labeled unresponsive and never produced to Defendant, or redacted without Defendant having an opportunity to evaluate the appropriateness of the redaction, much less object. On the other hand, Defendant's proposed method would allow both Parties to consider whether any Responsive ESI lacks relevance or ought to be redacted prior to production due to privacy concerns.

For the reasons stated, Defendant's proposed disclosure method is more reasonable and fair than the method proposed by Plaintiff. Defendant requests that the Court order the Parties to adopt a protocol for the forensic device inspections in substantially similar format as **Attachment D**, which reflects the terms previously agreed upon by the parties <u>and</u> the provisions regarding the simultaneous disclosure of Responsive ESI, consistent with Defendant's proposed approach described above.

### Plaintiff's Position:

Defendant's argument rests on a premise the Court has already rejected. The stipulated collection protocol includes a "privilege and responsiveness review" because that is what the Court ordered at the December 17, 2025 hearing on Plaintiff's Motion to Quash. A privilege and responsiveness review necessarily contemplates that Plaintiff reviews the collected materials

---

[7] Plaintiff claims that the Court ordered a "privilege and responsiveness review;" however, Defendant is unaware of any such order from the Court. Even if there was such an order, Defendant's proposed simultaneous disclosure subject to an AEO designation would allow the Parties' respective counsel to review the Responsive ESI for privilege, relevance, and privacy concerns before the data is disclosed to the Parties.

WBD (US) 4908-6117-6202

before any production is made to Defendant. It does not mean that all materials are simultaneously disclosed to both parties with the expectation that privilege or responsiveness issues will be addressed later through clawback.

Defendant's assertion that "there is no basis for a privilege review" improperly puts the cart before the horse. The purpose of a privilege review is to determine, after inspection, whether privileged material exists. That determination cannot be made in the abstract by speculating about what Plaintiff or her family members' devices may or may not contain. Nor is Defendant correct that Plaintiff is attempting to act as an improper "gatekeeper." Rather, under the proposed protocol, Plaintiff's counsel must identify the basis for any withholding. The protocol also makes clear that responsive materials may not be withheld solely because they do not contain an agreed-upon search term. If Defendant believes material has been improperly withheld or redacted, it may raise that issue with the Court. But Defendant is not entitled to preemptively receive all collected ESI, including potentially privileged or plainly irrelevant private information, merely because it falls within a disputed set of search terms. Additionally, Defendant's hypothetical is unfounded. Plaintiff has already agreed to include TCPA, telemarketing, and spam-related search terms, which would capture any relevant searches tied to Defendant's theory of manufacturing a TCPA claim. Excluding generic terms such as "litigation," "settlement," or counsel's name does not permit Plaintiff to withhold relevant ESI; it merely prevents an overbroad search that could sweep irrelevant and private material.

In short, Defendant's proposed protocol would render the Court-ordered privilege and responsiveness review meaningless by disclosing materials before the review takes place. Plaintiff requests that this court adopt **Attachment E,** the Stipulation Regarding Forensic Inspection Protocol for Electronic Devices, which includes a privilege and responsiveness review**.**

**ISSUE NO. 3:** Whether the responsive ESI from the devices and any deposition testimony by Plaintiff and/or her relatives relating to such ESI and/or the lead submissions received by Defendant may be used in a future proceeding.

**Defendant's Position:** Defendant has repeatedly articulated its belief that the two lead submissions it received with Plaintiff's contact information in October, 2023 were submitted by Plaintiff and/or her relatives for purposes of manufacturing a TCPA claim. Both lead submissions originated from an IP address associated with Plaintiff's daughter, and Plaintiff filed a separate TCPA lawsuit against one of Defendant's competitors, Intake Desk, which received a lead submission from the same IP address days after the lead submissions received by Defendant, and which included a Trusted Form Certificate wherein the person submitting the lead entered the same last name as Plaintiff's daughter before deleting it and entering Plaintiff's last name. The discovery sought by Defendant from Plaintiff and/or her relatives may reveal highly compelling evidence that would confirm Defendant's theory.

District courts from the First Circuit have held that "cloned discovery" produced in prior litigation may be used in a subsequent action when there is "substantial similarity" between the proceedings. *See Costa v. Wright Med. Tech., Inc.,* 2019 U.S. Dist. LEXIS 1450, **3-5 (D. Mass. Jan. 4, 2019) (ordering production of data and deposition testimony used in prior similar action); *see also* Town of Westport v. Monsanto Co., 2015 U.S. Dist. LEXIS 192494, at *8 (D. Mass. Nov.

5, 2015) ("Materials produced and deposition testimony given in other litigation is generally discoverable upon a showing of substantial similarity between the prior and current actions"). Here, both this action and any subsequent action brought by Defendant against Plaintiff and/or her relatives would raise the exact same issue—whether Plaintiff and/or her relatives were responsible for the lead submissions containing Plaintiff's information received by Defendant. Because the discovery at issue is targeted to this narrow, common question, Defendant is entitled to use any relevant ESI collected from Plaintiff and/or her relatives' devices, as well as related deposition testimony, in any subsequent proceeding against them relating to the lead submissions received by Defendant.

However, in negotiating a stipulated protective order, Plaintiff has maintained the position that any discovery obtained in this litigation that evidences a manufactured TCPA claim (including ESI from the devices) may not be used by Defendant outside of defending this litigation. Essentially, Plaintiff suggests that the parties should engaged in the exact same discovery in any subsequent action. Requiring the parties to reinvent the wheel in this manner makes no sense, and Defendant is unwilling to agree to Plaintiff's proposed restriction on the use of discovery.

For the reasons stated, Defendant requests that the Court order the Parties to adopt a protective order regarding confidentiality in substantially similar format as **Attachment F**, which reflects the terms previously agreed upon by the parties and the following provision consistent with Defendant's argument above relating to use of discovery in subsequent litigation:

> "5. Designated Material shall only be used for the purpose of litigating the claims and defenses in this action, or by Defendant, Plaintiff, or her family members in prosecuting claims against Defendant, Plaintiff, or her family members."

**Plaintiff's Position**:

Plaintiff is not attempting to "reinvent the wheel" or restrict Defendant's ability to defend this action. Plaintiff simply seeks to ensure that discovery volunteered here, which includes forensic device data from nonparties, is used only for litigating the claims and defenses in this case. Accordingly, Plaintiff proposes the following language:

> "Designated Material derived from the electronic devices of Plaintiff and her family shall not be used for any purpose other than litigating the claims and defenses in this action."

Defendant's cited cases do not support its attempt to prospectively reserve the right to use discovery obtained in this case to prosecute Plaintiff or her family in future proceedings. *Costa* and *Town of Westport* stand only for the limited proposition that discovery generated in prior, substantially similar litigation may, in certain circumstances, be *discoverable*. Nothing in those authorities authorizes converting discovery volunteered by nonparties in one action into a pre-litigation evidentiary record for hypothetical future claims in a subsequent action. To the contrary, Defendant's citations confirm that those cases addressed the discoverability of prior litigation materials and not the forward-looking use of discovery. Accordingly, Plaintiff does not agree to Defendant's proposed language and requests that the court adopt the language Plaintiff proposed, which is included in **Attachment G**.

Dated: January 27, 2026

    Respectfully submitted,

    **EMILY TEMAN, individually and on behalf of all others similarly situated,**
    By her counsel,

    */s/ Anthony I. Paronich*
    Anthony I. Paronich
    PARONICH LAW, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, MA 02043
    Telephone: (508) 221-1510
    anthony@paronichlaw.com

    **SELECT JUSTICE, LLC,**
    By its counsel,

    */s/ Michael K. Lane*
    Michael K. Lane, BBO# 673501
    Womble Bond Dickinson (US) LLP
    470 Atlantic Avenue, Suite 600
    Boston, MA 02210
    (857) 287-3160
    michael.lane@wbd-us.com

## **RULE 7.1 (a)(2) CERTIFICATE**

I, Michael K. Lane, hereby certify that the parties are filing this Joint Letter in a joint capacity.

    */s/ Michael K. Lane*
    Michael K. Lane

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed on January 27, 2026 through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                            */s/ Michael K. Lane*

WBD (US) 4908-6117-6202